UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC., | § § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-CV-507 |
| HOFFMANN-LA ROCHE INC., | § | |
| ROCHE LABORATORIES INC., | § | |
| ROCHE COLORADO CORP., | § | |
| TRIMERIS, INC., and | § | |
| F. HOFFMANN-LA ROCHE LTD., | § | |
| | § | |
| Defendants. | § | |

**RENEWED MOTION OF DEFENDANTS HOFFMANN-LA ROCHE INC., ROCHE LABORATORIES INC. AND TRIMERIS, INC. TO TRANSFER PURSUANT TO 28 U.S.C. §§ 1404 AND 1406 OR, IN THE ALTERNATIVE, TO DISMISS TRIMERIS**

## TABLE OF CONTENTS

Page

I.  Summary of Argument ...............................................................................................2

II  Facts .......................................................................................................................5

    A.  Nature and Stage of the Proceedings ................................................................5

    B.  Parties.............................................................................................................5

III  Argument ...............................................................................................................7

    A.  Transferring This Case to the Eastern District of North Carolina Is Authorized by Sections 1404 and 1406, Would Serve the Private Interests of The Litigants and Would Serve The Public Interest ...................................................................7

        1.  This Court Has Power To Transfer This Case With Respect To All Defendants Properly Before It, Plus Trimeris...............................................................7

            a.  This Case Might Have Been Brought In The Eastern District Of North Carolina.............................................................................................8

            b.  This Court May Transfer This Case Without Resolving Disputed Issues of Personal Jurisdiction and Venue ..............................................9

        2.  The Private Interest and The Public Interest Factors Must Be Considered ..................9

        3.  The Private Interest Factors Support The Requested Transfer ....................................10

            a.  Sources Of Proof Reside In The EDNC ...........................................10

            b.  The EDNC Can Exercise Compulsory Process Over Key Non-Party Witnesses .......................................................................................11

            c.  The Costs of Attendance For Willing Witnesses Would Be Far Lower In The EDNC .................................................................................12

        4.  The Public Interest Factors Support The Requested Transfer .....................................13

            a.  The Administrative Difficulties Flowing From Court Congestion Favor A Transfer To The EDNC ..........................................................13

            b.  No Localized Interest Is At Stake In The Eastern District of Texas.....................13

            c.  Transfer Will Conserve Judicial Resources By Avoiding Duplicative Litigation And Resolving Jurisdictional Issues .................................14

        5.  The Center of Gravity Of The Accused Activity Is In Or Near North Carolina .........14

    B.  This Court Lacks Personal Jurisdiction Over Trimeris.....................................................15

        1.  Specific Personal Jurisdiction Is Absent Because Novartis' Cause of Action Does Not Arise From Trimeris' Forum-Related Activities ...............................19

        2.  Trimeris Lacks The Continuous And Systematic Contacts With Texas That Are Required For General Personal Jurisdiction ......................................................21

C.  Venue Over Trimeris Is Not Proper In The Eastern District Of Texas .............................21

IV. Conclusion .....................................................................................................................23

Defendants and Counterclaim-Plaintiffs Hoffmann-La Roche Inc. and Roche Laboratories Inc. (collectively the "Roche Defendants") and Defendant Trimeris, Inc. ("Trimeris") hereby move for an Order transferring this action to the United States District Court for the Eastern District of North Carolina (the "EDNC") pursuant to 28 U.S.C. §§ 1404 and 1406.  If transfer is denied, Trimeris moves, in the alternative, for an Order dismissing Trimeris from this action under Federal Rules of Civil Procedure 12(b)(2) and (3).[1]  Trimeris and the Roche Defendants previously moved for the same relief and, on September 3, 2008, this Court denied the motion without prejudice in light of the then-pending *en banc* decision in *In re Volkswagen*.  (Dkt. #51).  In that order, this Court stated, "this decision [in *In re Volkswagen*] is controlling" and instructed that the "parties may renew their motions after the Fifth Circuit has ruled so that the parties and the Court may have the benefit of a final decision regarding this matter."  (*Id.*).  Now that the *en banc* Fifth Circuit has granted a writ of *mandamus*, holding that the district court "clearly abused its discretion and reached a patently erroneous result" in refusing to transfer that case to the Northern District of Texas, *In re Volkswagen*, No. 07-40058, 2008 WL 4531718, at *11 (5th Cir. Oct. 10, 2008), Trimeris and the Roche Defendants renew their motions.

---

[1]     Defendants Roche Colorado Corp. ("Roche Colorado") and F. Hoffmann-La Roche Ltd. ("Roche Ltd.") are not subject to jurisdiction or venue in this district and must be dismissed from this matter, as set forth in their separate motions to dismiss.  Roche Colorado and Roche Ltd. also are not subject to jurisdiction or venue in the EDNC and, accordingly, are not joining in this motion. *Cf. Virgin Wireless, Inc. v. Virgin Enters. Ltd.*, 201 F. Supp. 2d 294, 301 (D. Del. 2002) (dismissing a defendant that was not subject to personal jurisdiction and transferring with respect to the other defendants).  However, any rationale that might subject Roche Colorado or Roche Ltd. to jurisdiction and venue in this district would apply equally to the EDNC.  Accordingly, if either Roche Colorado or Roche Colorado are not dismissed, each should likewise be transferred to the EDNC together with Trimeris and the Roche Defendants.

I.       **Summary of Argument**

This is a patent infringement case in which Novartis Vaccines and Diagnostics, Inc.

("Novartis") asserts that the defendants infringe U.S. Patent No. 7,285,271 ("the '271 Patent" or

"patent-in-suit").  Novartis alleges that the '271 Patent covers Fuzeon, which is a life-saving HIV

inhibitor invented by Duke University scientists, developed at Trimeris and commercialized by

the Roche Defendants and their affiliates.

As in *In re Volkswagen*, "the only factor that favors keeping the case in Marshall, Texas,

is the plaintiff['s] choice of venue."  2008 WL 4531718, at *3.  The Eastern District of Texas has

no connection to the parties, the witnesses or the facts of this case, while the EDNC has

extensive connections to the parties, the witnesses and facts of this case.  The facts of this case

mandate transfer at least as strongly, if not more so, than those presented in *In re Volkswagen*.

Under *In re Volkswagen*, the plaintiff's choice of venue is not sufficient to retain this case in the

Eastern District of Texas and transfer is required.

The center of gravity of this dispute is in North Carolina, where the peptide now

marketed as Fuzeon was invented in 1990.  The laboratory experiments and pre-clinical

development of Fuzeon as a first-in-its-class therapeutic was performed in North Carolina.

Important third party witnesses reside in North Carolina and are subject to compulsory process in

the EDNC.  They include:

- Dr. Dani Bolognesi, a co-inventor of the Fuzeon peptide in whose laboratory that peptide

    and its ability to prevent the AIDS virus (HIV-1) from "fusing" to and entering the cells

    of a patient's immune system was discovered.[2]  His testimony that this discovery was

    surprising and unpredictable from the HIV-1 nucleotide sequence is highly material to the

_____

[2]       Dr. Thomas Matthews, the co-inventor who first identified the Fuzeon peptide, tragically
died in 2004.

Roche Defendants' counterclaim that Fuzeon does not embody the alleged invention described in the '271 Patent and that the '271 Patent is invalid under 35 U.S.C. ¶ 112. (*See* Counterclaim ¶¶ 3-4; Exhibit A, Bolognesi Decl., ¶¶ 2-4 (originally submitted as Dkt. 29-1))[3].

- Dr. Michael Greenberg, the scientist who most closely collaborated with the late Dr. Matthews, was the first to show that the Fuzeon peptide is effective against clinical isolates of the AIDS virus, and identified the mechanism of action of Fuzeon. His testimony is highly material to the Roche Defendants' counterclaim that Fuzeon does not embody the alleged invention described in the '271 Patent and that the '271 Patent is invalid under 35 U.S.C. ¶ 112. (*See* Counterclaim ¶¶ 3-4; Exhibit B, Greenberg Decl., ¶¶ 2-3 (originally submitted as Dkt. 29-2)).

- Dr. Bryan L. Bray, who led the team of scientists that devised a method of performing controlled synthesis of the 36 amino acids that comprise Fuzeon and thus enabled the manufacture of Fuzeon as a pharmaceutical agent. His testimony is highly material to the Roche Defendants' counterclaim that the '271 Patent is invalid for failure to describe or enable a technique for producing synthetic proteins as large as those encompassed by the claims. (*See* Counterclaim ¶ 4; Exhibit C, Bray Decl., ¶¶ 2-3 (originally submitted as Dkt. 29-3)).

- Dr. Lynn Smiley, the medical doctor who supervised Trimeris' FDA-mandated clinical trials of Fuzeon which demonstrated both the life-saving benefit and the unfortunate side-effects that result from injections of Fuzeon. Her testimony is highly material to the

---

[3]    For ease of reference, clean copies of the exhibits previously submitted to the Court are being re-submitted as exhibits to this Renewed Motion, along with the docket number under which that exhibit originally was docketed.

Roche Defendants' Fifth Affirmative Defense that the injunction sought by Novartis

would be against the public interest because it would lead to the death of end stage AIDS

patients relying on Fuzeon, (*see* Answer ¶ 37; Exhibit D, Smiley Decl., ¶¶ 2-3 (originally

submitted as Dkt. 29-4)), as well as to Novartis' claim for damages.

Additionally, important documentary evidence in this matter resides in the Eastern District of

North Carolina.  Moreover, the nearly 1000 mile distance from Marshall to Durham, North

Carolina vastly exceeds the distance from Marshall to Dallas at issue in *In re Volkswagen*.

In contrast, no important event relating to the '271 Patent or the invention, development

or marketing of Fuzeon is alleged to have taken place in the Eastern District of Texas.  Rather,

Novartis asks this Court to adjudicate this dispute based solely on the happenstance that some

minute quantity of Fuzeon was sold in this district.   As the Fifth Circuit held in *In re

Volkswagen*, this coincidence does not give the Eastern District of Texas a localized interest in

this case.  If this case is not transferred, defendant Trimeris would not be before the Court, and

the Court and jury would be deprived of live testimony of important third party witnesses, as set

forth in the accompanying declarations of Dr. Bolognesi, Dr. Greenberg, Dr. Bray, and Dr.

Smiley (collectively, the "Third Party Declarations").

This case might have been brought in the EDNC, where jurisdiction and venue are proper

with respect to Trimeris and all of the defendants who are subject to jurisdiction in this Court

(the Roche Defendants).  The EDNC can resolve this dispute amongst all the parties, which this

Court cannot do.  The EDNC will have the benefit of in-person testimony from scientists who

invented and developed Fuzeon.  Accordingly, the requested transfer would serve not only the

convenience of the witnesses and the parties, but also the interests of justice.

## II.     FACTS

### A.     Nature and Stage of the Proceedings

This is an action for alleged infringement of '271 Patent, issued to Paul A. Luciw and Dino Dina on October 23, 2007 and entitled "Antigenic Composition Comprising An HIV gag or env Polypeptide." (Complaint, ¶ 11 & Exhibit A thereto).  The Complaint alleges that Novartis is the owner by assignment of all rights, title, and interest in and to the '271 Patent.  (*Id.*, ¶ 12). The Complaint alleges that the defendants have infringed the patent-in-suit by making and commercializing Fuzeon.  (*See id.*, ¶ 13).

This action was commenced on November 19, 2007.  Defendants Roche Colorado and Roche Ltd. have separately moved for dismissal for lack of jurisdiction and venue.

### B.     Parties

None of the litigants before this Court has any connection to the Eastern District of Texas.  Hoffmann-La Roche Inc. is a New Jersey corporation and Roche Laboratories Inc. is a Delaware corporation, both with their principal places of business in Nutley, New Jersey.  (*Id.*, ¶¶ 2, 3).  Defendant Trimeris, Inc., is a Delaware corporation with a place of business in Morrisville, North Carolina.  (*Id.,* ¶ 5).  Defendant Roche Colorado is a Delaware corporation with its principal place of business in Boulder, Colorado.  (*Id.*, ¶ 4).  Defendant Roche Ltd. is a Swiss corporation with its principal place of business in Basel, Switzerland.  (*Id.*, ¶ 6).  Plaintiff Novartis alleges that it is a Delaware Corporation with its principal place of business in Emeryville, California.  (*Id.*, ¶ 1).

Trimeris has no contacts with the forum that would subject it to the Court's jurisdiction. Trimeris has traditionally been a research-based company that enters into strategic alliances for the commercialization, including manufacturing, marketing and distribution, of the fruits of its research.  (Exhibit E, Graham Decl., ¶ 5).  Trimeris was formed in 1993 by several researchers

from Duke University Medical Center with the vision of revolutionizing the treatment of infectious diseases, specifically HIV, the virus responsible for AIDS. (*Id.*, ¶ 6). These researchers discovered a molecule (which came to be called Fuzeon) derived from a portion of the virus itself that became the first in a new class of anti-HIV therapies. (*Id.*; Exhibit F, First Klein Decl., ¶ 3 (originally filed as Dkt. 29-7)).

Trimeris spent several years performing clinical tests, and in 1999 formed a collaboration with Roche Ltd. and Hoffmann-La Roche Inc. to develop and commercialize Fuzeon. (Exhibit E, ¶ 7; Exhibit F, ¶ 3). Fuzeon was jointly developed by the Roche entities and Trimeris; however, the Roche entities exclusively manufacture and distribute Fuzeon. (Exhibit E, ¶ 8; Exhibit F, ¶ 4). The Roche Defendants have responsibility for developing and executing the marketing plan for Fuzeon. (Exhibit F, ¶ 4). Subsequent to its research and development efforts, Trimeris has engaged in some promotional activity for Fuzeon that ended as of January 2007. (Exhibit E, ¶ 8). Trimeris also engaged in clinical trials of Fuzeon, some of which took part in Texas, but those trials were completed as of February 1, 2007 – before the '271 Patent issued – and in any event did not take place in the Eastern District of Texas. (*Id.*).

Trimeris is only a passive recipient of a one-half payout of net profits calculated for U.S. and Canadian sales of Fuzeon and shares in a portion of the net sales in other countries but has no involvement with the product's manufacture, sale or distribution. (*Id.*; Exhibit F, ¶ 4). Since February 2007, Trimeris has not manufactured, used, sold or offered to sell Fuzeon in Texas, and Trimeris has not at any time conducted any such activities in the Eastern District of Texas. (Exhibit E, ¶ 10; Exhibit F, ¶ 6). While Trimeris maintains a publicly accessible Internet website that provides information about Fuzeon, Trimeris has not offered or provided any products through that website, and residents of Texas cannot order Fuzeon through Trimeris' website.

(Exhibit E, ¶ 23; Exhibit F, ¶ 8).  Trimeris has no offices in Texas, or for that matter, anywhere outside North Carolina.  (Exhibit E, ¶ 14).  Trimeris has not registered to do business in the State of Texas, has not appointed an agent for service of process in Texas, has not maintained any place of business in Texas, has had no telephone listings or mailing addresses in Texas, and has not maintained any stock of goods within Texas, nor has Trimeris initiated suit in Texas, owned any real property in Texas, or held any bank accounts in Texas.  (*Id*., ¶¶ 15-22).  Since February 2007, Trimeris has not participated in trade shows or meetings taking place in the State of Texas.  (*Id.*, ¶ 24).  Moreover, Trimeris has no employees working in the Eastern District of Texas and has not paid salaries to any person or entity located in the Eastern District of Texas.  (*Id.*, ¶ 13).

Although some Fuzeon clinical trials were conducted in the State of Texas, none were conducted in the Eastern District of Texas.  (Exhibit G, Guittari Decl. ¶ 4 (originally submitted as Dkt. 47-7)).  The clinical trial of Fuzeon that was conducted partially in Texas consisted of three Texas sites (each outside of the Eastern District of Texas) and had a total patient enrollment of five subjects, each of whom has completed the trial.  (*Id.* ¶ 5).  Although the three Texas sites have not closed, Trimeris' involvement in the trial ended as of November 2007.  (*Id.* ¶¶ 3-5).

## III.   ARGUMENT

### A.   Transferring This Case to the Eastern District of North Carolina Is Authorized by Sections 1404 and 1406, Would Serve the Private Interests of The Litigants and Would Serve The Public Interest

#### 1.   *This Court Has Power To Transfer This Case With Respect To All Defendants Properly Before It, Plus Trimeris*

A transfer requires that the case "might have been brought" in the transferee district.  Once this threshold requirement is satisfied, transfer lies in the court's discretion and turns on factors affecting the private interests of the litigants and the interests of the public.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).  Both Sections 1404 and 1406 permit this Court

to transfer this action "in the interest of justice." *Bentz v. Recile*, 778 F.2d 1026, 1027-28 (5th Cir. 1985) ("sections 1404(a) and section 1406(a) employ an 'interest of justice' standard").[4]  A party seeking transfer under Section 1404(a) is required to show "good cause," and "[w]hen the movant demonstrates that the transferee venue is clearly more convenient . . . it has shown good cause and the district court should therefore grant the transfer." *In re Volkswagen*, 2008 WL 4531718, at *7 .

> a.  This Case Might Have Been Brought In The Eastern District Of North Carolina

Novartis could have brought this action in the EDNC against the Roche Defendants, over whom this Court has jurisdiction, and Trimeris, over whom this Court does not have jurisdiction. Subject matter jurisdiction is proper there, since 28 U.S.C. § 1338(a) grants all district courts original jurisdiction of patent infringement actions.  The Roche Defendants and Trimeris are subject to personal jurisdiction there because Trimeris, at the time the Complaint was filed, had its principal place of business in the EDNC at Morrisville, North Carolina, (*see* Complaint, ¶ 5; Exhibit E, ¶ 3) and the Roche Defendants distribute and sell Fuzeon "throughout the United States."  (*Id.* ¶ 8).[5]  Because personal jurisdiction exists in the EDNC over each of these defendants, venue is proper there under 28 U.S.C. § 1400(b).  *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1574 (Fed. Cir. 1990).

---

[4]     Because this case will not present issues of state law or defenses based upon any statute of limitations, the fine distinctions between transfers under Sections 1404 and 1406 are not relevant here.  *Bentz*, 778 F.2d at 1028.  *See Jackson v. West Telemarketing Corp. Outbound*, 245 F.3d 518, 522 – 23 (5th Cir. 2001) (discussing differing treatment of choice of law issues following transfers under Sections 1404 and 1406); *Phillips v. Illinois Cent. Gulf RR*, 874 F.2d 984, 987-88 (5th Cir. 1989) (discussing differing treatment of statute of limitations following transfers under Sections 1404 and 1406).

[5]     Absent objection from Novartis, this Court could transfer the claims against Roche Colorado and Roche Ltd. to the EDNC without prejudice to Roche Colorado and Roche Ltd. renewing their jurisdictional challenges in that forum.

        b.       This Court May Transfer This Case Without Resolving Disputed
                      Issues of Personal Jurisdiction and Venue

The Court's power to transfer does not depend on the propriety of venue in the Eastern District of Texas.  Defendants for whom venue is improper in this district, such as Trimeris, are subject to transfer under 28 U.S.C. § 1406(a), whether or not this Court possesses personal jurisdiction over them.  *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962).

        2.     *The Private Interest and Public Interest Factors Must Be Considered*

In a patent infringement action, transfer under Section 1404(a) is governed by the law of the regional circuit.  *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003). Under Fifth Circuit law, when considering a Section 1404 motion to transfer, a district court should consider a number of private and public interest factors,  none of which "can be said to be of dispositive weight."  *In re Volkswagen*, 2008 WL 4531718, at *8 (quoting *Action Indus. Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)).  "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Id.* at *8. "The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Id.* (brackets in original).

The weight to be accorded the plaintiff's choice of forum is limited.  "[W]hile a plaintiff has the privilege of filing his claims in any judicial division appropriate under the general venue statute, § 1404(a) tempers the effects of the exercise of this privilege."  *Id.* at *6.  "A plaintiff's choice of forum, however, is not an independent factor within the *forum non conveniens* or the §

1404(a) analysis." *Id.* at *7 n.10.  Rather, the plaintiff's choice of forum is "taken into account as it places a significant burden on the movant to show good cause for the transfer." *Id.*  As noted above, "good cause" is shown by demonstrating that "the transferee venue is clearly more convenient." *Id.* at *7.

As set forth below, the EDNC is clearly more convenient and a transfer therefore should be ordered.

        3.     *The Private Interest Factors Support The Requested Transfer*

        a.     Sources Of Proof Reside In The EDNC

The first private interest factor to be considered is "the relative ease of access to sources of proof" – meaning documentary and physical evidence. *Id*. at *9.  The *Volkswagen* court specifically re-affirmed that "that the sources of proof requirement is a meaningful factor in the analysis." *Id.*  It rejected the idea that the electronic availability of documents eliminated this factor and held the district court "erred" in "read[ing] the sources of proof requirement out of the § 1404(a) analysis." *Id.*  "That access to some sources of proof represents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Id.*

Here, the key sources of proof with regard to defendants' lack of enablement defenses reside in North Carolina, where the invention and pre-clinical development of Fuzeon occurred. These documents will attest to the failure of the '271 Patent to describe or enable the development of Fuzeon and the extraordinary science that was required to develop this path-breaking AIDS treatment approximately a decade after the sequence of the HIV-1 virus was published.  This proof will demonstrate that the '271 Patent neither described any peptide that would prevent the AIDS virus from entering the cells of a patient's immune system nor enabled one of ordinary skill in the art to synthesize peptides as long as those claimed in the '271 Patent.

- 10 -

Additionally, documents in the EDNC will demonstrate the extraordinary benefits and burdens of Fuzeon to its recipients.  These documents will evidence that the injunction that Novartis seeks against the distribution of Fuzeon would almost certainly hasten the death of Fuzeon recipients, because it is the last line of defense for AIDS patients who have developed a resistance to all other known treatments.  They also will evidence the side effects that accompany Fuzeon, which limit the market for this therapy, increase the costs of delivery and decrease the profit obtained from its sale.

While documentary proof exists in the EDNC, virtually none exists in the Eastern District of Texas.  Accordingly, this factor weighs strongly in favor of transfer.

> **b.**     The EDNC Can Exercise Compulsory Process Over Key Non-Party Witnesses

"The second private interest factor is the availability of compulsory process to secure the attendance of witnesses."  *Id.*  Here, compulsory process would not be available in this district because no percipient witness resides in, or within 100 miles of, the Eastern District of Texas. Rather, as set forth in the Third Party Declarations, important third party witnesses are subject to compulsory process in the EDNC.  The situation here far outstrips that presented in *In re Volkswagen*, where the witnesses were subject to subpoena in the Northern District of Texas, but outside of 100 miles from Marshall, Texas.  *Id.*  Here, the witnesses are not within mere driving distance from Marshall, Texas, but rather reside over 1,000 miles away in North Carolina.

The *Volkswagen* court held that the fact that the availability of "a proper venue that does enjoy *absolute* subpoena power for both depositions and trial" was a factor that "weighs in favor of transfer."  *Id.*  Each of the key witnesses that submitted a Third Party Declaration would be subject to process in the EDNC, but unlikely to be able to attend trial in the Eastern District of

Texas.  (*See* Exhibit A, ¶ 5; Exhibit B, ¶ 5; Exhibit C, ¶ 4; Exhibit D, ¶ 4).  Accordingly, this factor weighs strongly in favor of transfer.

> c.   The Costs of Attendance For Willing Witnesses Would Be Far Lower In The EDNC

The third private interest factor is the cost of attendance for willing witnesses.  The financial burdens on any witness traveling from North Carolina to Marshall, Texas would also be real, while trial in the EDNC would impose little to no burden.  "[I]t is an obvious conclusion that it is more convenient for witnesses to testify at home and that additional distance means additional travel time; additional travel time increases the probability of meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment."  *In re Volkswagen*, 2008 WL 4531718, at *10 (internal quotations omitted).  The *Volkswagen* court held that these factors favored transfer when the "155 mile[]" journey was only from Dallas to Marshall.  *Id.*  Here, the witnesses would have to undertake, at a minimum, a multi-day journey with lodging and meal expenses.  The *Volkswagen* court held "the factor of inconvenience to witnesses increases in direct relationship to the additional distance [beyond 100 miles] to be traveled."  *Id.*  This factor weighs strongly towards transfer.

Although the *Volkswagen* court held that affidavits from these witnesses "indicating what specific testimony they might offer" or "why such testimony is important or relevant" are not necessary, *id.* at *9 n.12, the movants here have provided precisely that information.  In *Volkswagen*, the court held that affidavits stating that "traveling to the Marshall Division [from Dallas] would be inconvenient" was sufficient.  *Id.* at *9.  The Third Party Declarations

- 12 -

specifically set forth the areas of testimony from the willing witnesses and this Motion explains the relevance and importance of that testimony.[6]

4.      *The Public Interest Factors Support The Requested Transfer*

a.      The Administrative Difficulties Flowing From Court Congestion Favor A Transfer To The EDNC

The first public interest factor is, "the administrative difficulties flowing from court congestion." *Id.* at \*8.  The days when the Eastern District of Texas had an unclogged "rocket docket" have passed.  The Federal Court Management Statistics for 2007 bear out these observations.  (Excerpts attached as Exhibit H (originally submitted as Dkt. 29-8)).  The average time from "filing to trial" for cases in the Eastern District of Texas for 2007 was 18.0 months (up from 14.0 months in 2002), making the Eastern District of Texas the 14th fastest court.  (*See* Exhibit H).  In contrast, the Federal Court Management Statistics for 2007 show that the EDNC has the 10th fastest docket, with an average on only 16.5 months from "filing to trial."  (*Id.*)  Like the Eastern District of Texas, the EDNC has adopted Local Patent Rules (*See* Exhibit I (originally submitted as Dkt. 47-3)).  This factor favors transfer.

b.      No Localized Interest Is At Stake In The Eastern District of Texas

The second public interest factor is "the local interest in having localized interests decided at home."  *In re Volkswagen*, 2008 WL 4531718, at \*8.  There is no localized interest in having this dispute decided in the Eastern District of Texas because Fuzeon was not invented or developed in this district.  The *Volkswagen* court held that where none of the witnesses are in and no relevant events occurred in a jurisdiction, that forum does not have a localized interest.  *Id.* at \*10.

---

[6]      With regard to the final private interest factor – "all other practical problems that make trial of a case easy, expeditious and inexpensive" – since no relevant evidence or witnesses are in the Eastern District of Texas and such evidence and witnesses can be found in the EDNC, this factor is either neutral or weighs towards transfer.

The *Volkswagen* court strongly rejected the notion that the mere sale of an item in a jurisdiction created a local interest.  "[T]he district court's provided rationale – that the citizens of Marshall have an interest in this product liability case because the product is available in Marshall, and that for this reason jury duty would be no burden – stretches logic in a manner that eviscerates the public interest that this factor attempts to capture."  *Id.*  The *Volkswagen* court held that such a rule "could apply virtually to any judicial district or division in the United States; it leaves no room for consideration of those actually affected – directly and indirectly – by the controversies and events giving rise to a case."  *Id.*  Because this case has no connection to the Eastern District of Texas other than the sale of small amounts of Fuzeon within the district, this factor strongly favors transfer.

<blockquote>c.        Transfer Will Conserve Judicial Resources By Avoiding Duplicative Litigation And Resolving Jurisdictional Issues</blockquote>

The fourth public interest factor is "the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law."  Here, because Trimeris must be dismissed or transferred to the EDNC, *see* Section B, *infra*, failure to transfer the Roche Defendants would raise the prospect of two litigations in different district courts involving precisely the same issues.  This would represent "the wastefulness of time, energy and money that Section 1404(a) was designed to prevent."  *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).

<blockquote>5.        *The Center of Gravity Of The Accused Activity Is In Or Near North Carolina*</blockquote>

In a patent infringement action, "the preferred forum is that which is the center of gravity of the accused activity."  *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003); *Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) (following *Minka* and granting

transfer); *Baxa Corp. v. Forhealth Techs., Inc.*, No. 3:05-CV-2274-D, 2006 WL 680503, at *2 (N.D. Tex. March 15, 2006) (same).

The center of gravity analysis is not synonymous with the center-of-geography. Rather, it is based on "the location of a product's development, testing, research, and production." *Minka,* 2003 WL 21251684, at*3; *accord Amini,* 512 F. Supp. 2d at 1044; *Baxa,* 2006 WL 680503, at *2. Here, the discovery and pre-clinical development of the accused product occurred at Duke University and Trimeris, both of which are located in North Carolina. Subsequent development and commercialization occurred at Hoffmann-La Roche and Roche Laboratories, which are located in New Jersey and accordingly are much closer to the EDNC than to this district. Moreover, the alleged invention claimed in the patent-in-suit arose from work conducted in Northern California, where the named inventors reside. (*See* Complaint, Exh. A (cover page, identifying the named inventors as residents of San Francisco, California)). In intellectual property cases, which "often focus on the activities of the alleged infringer, its employees, and its documents; [] the location of the alleged infringer's principal place of business is often the critical and controlling consideration in adjudicating transfer of venue motions." *Amini,* 512 F. Supp. 2d at 1044 (quoting *Houston Trial Reports, Inc. v. LRP Publ'ns, Inc.*, 85 F. Supp. 2d 663, 668 (S.D. Tex. 1999)); *accord Minka*, 2003 WL 21251684, at *3. Although subsequent development and commercialization occurred elsewhere, the center of gravity is undoubtedly in the EDNC. The center of gravity favors transfer.

### B.   This Court Lacks Personal Jurisdiction Over Trimeris

The personal jurisdiction requirement stems from both constitutional and statutory limits on a federal district court's authority and "represents a restriction on judicial power . . . as a matter of individual liberty." *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (citation and quotation marks omitted). Since patent infringement actions arise under a federal

statute, the Due Process clause at issue is that of the Fifth Amendment, even though the due

process analysis tracks the Supreme Court's jurisprudence under the Fourteenth Amendment.

*Akro Corp. v. Luker*, 45 F.3d 1541, 1544-45 (Fed. Cir. 1995).

In patent cases, Federal Circuit precedent is controlling on the issue of personal

jurisdiction.  *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 655 (E.D. Tex. 2007)

(Folsom, J.) (applying *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed.

Cir. 1996)); *accord 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998)

(district court erred by applying regional circuit law on the issue of personal jurisdiction).

Personal jurisdiction involves a two-part analysis:  (1) whether jurisdiction is appropriate

under the applicable state long-arm statute; and (2) whether the requirements of constitutional

due process are satisfied.  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1202 (Fed. Cir.

2003).  Because the long-arm statute in Texas extends to the limits of due process, *Stroman*

*Realty, Inc. v. Wercinski*, 513 F.3d 476, 482 (5th Cir. 2008), the Court may proceed directly to

the due process analysis.  *QR Spex*, 507 F. Supp. 2d at 655 (applying *Viam*, 84 F.3d at 427).

Due Process requires that in order to subject a foreign defendant to jurisdiction in a forum

state, the defendant must "have certain minimum contacts with it such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co.*

*v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985), the Supreme Court held that

the minimum contacts must be "purposeful" contacts, so that non-residents have fair warning

that a particular activity may subject them to litigation within the forum.  In *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980), the Supreme Court further held that

minimum contacts could be found only where the defendant "purposely avails itself of the

privilege of conducting activities within the forum State" such that it "should reasonably anticipate being haled into court there."

The Federal Circuit applies a three part test in determining whether the exercise of personal jurisdiction satisfies due process in a patent infringement case: (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the "litigation results from alleged injuries that arise out of or relate to those activities"; and (3) whether the assertion of personal jurisdiction is reasonable and fair. *Akro*, 45 F.3d at 1545, 1546.

To meet its burden of establishing personal jurisdiction over Trimeris, Novartis generally must show (among other things) that maintaining the suit in the forum state comports with due process. *Dainippon Screen Mfg. Co., v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998). Due process requires that: (1) Trimeris must have some "minimum contacts" with the forum that results from an affirmative act on its part such that Trimeris could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require Trimeris to defend a suit in the forum. *Burger King*, 471 U.S. at 474-77; *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1373-74 (Fed. Cir. 2000); *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999). Here, Trimeris does not have sufficient contacts with the State of Texas that would make it fair to force Trimeris to defend itself in this District.

Minimum contacts can be established through contacts sufficient to assert personal jurisdiction that is either "specific" or "general" in nature. *LSI*, 232 F.3d at 1375; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). "Both categories of minimum contacts require some act by which the defendant purposefully avails himself or herself of the privilege of conducting activities within the forum state, and thus invoke the benefits and

protections of its laws." *DakColl Inc. v. Grand Cent. Graphics, Inc.*, 352 F. Supp. 2d 990, 995 (D.N.D. 2005).

Specific jurisdiction exists when the cause of action "arises out of" or "relates to" the defendant's contacts with the forum, even if those contacts are "isolated and sporadic." *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1279 (Fed. Cir. 2005); *LSI*, 232 F.3d at 1375 (quoting *Burger King*, 471 U.S. at 472). The Supreme Court also has held that even multiple related acts are still insufficient to support specific jurisdiction unless the acts create a substantial connection with the forum. *Burger King*, 471 U.S. at 476 n.18 ("'some single or occasional acts' related to the forum may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum"). For specific jurisdiction to be proper, Novartis must show that Trimeris "purposefully directed" its activities at the forum's residents, that Novartis' infringement claims arise out of, or relate to those activities, and that Trimeris should "reasonably anticipate being haled into court" in the forum as a result of those activities. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1351 (Fed. Cir. 2002). Thus, the minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum and the litigation. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

General personal jurisdiction requires a greater showing. Specifically, the plaintiff must show that the defendant's contacts with the forum are "continuous and systematic." *Id.* at 415-16. "'Random,' 'fortuitous,' or 'attenuated' contacts do not count in the minimum contacts calculus." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998) (quoting *Burger King*, 471 U.S. at 475).

1.      *Specific Personal Jurisdiction Is Absent Because Novartis' Cause of
Action Does Not Arise From Trimeris' Forum-Related Activities*

Novartis can make no showing that its claim for patent infringement against Trimeris arises from or relates to any Texas-based contacts of Trimeris.  Trimeris is not incorporated in Texas, has no corporate office, branch office or comparable facility in Texas and has no telephone listings or mailing addresses in Texas.  (Exhibit E, ¶¶ 3, 14, 18).  None of Trimeris' officers, directors, employees or other company representatives resides or is domiciled in Texas. (*Id*., ¶ 13).  Trimeris has not owned bank accounts or real property in Texas, (*id.*, ¶¶ 21-22), nor has Trimeris owned or rented any physical facilities in Texas.  (*Id.*, ¶ 14).  Trimeris has not maintained any stock of goods within Texas, (*id.*, ¶ 19), and has never initiated suit or otherwise sought to utilize the court systems in Texas.  (*Id.*, ¶ 20).

Further, Trimeris has not purposefully directed any relevant activities towards Texas. Trimeris has made no sales or shipments to the Eastern District of Texas.  (*Id.*, ¶ 10; *see also* Exhibit F, ¶ 6).  Trimeris has not delivered products "into the stream of commerce with the expectation that they will be purchased by consumers in [Texas]."  *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).  Because the Fuzeon website does not allow consumers in Texas, or anywhere else, to order Fuzeon through an Internet sale, (Exhibit E ¶¶ 25-26, Exhibit J, Second Klein Decl. (originally submitted as Dkt. 47-7) ¶ 3), it is not an "interactive" website that would support the exercise of jurisdiction over Trimeris.  *See Litepanels, LLC v. Gekko Tech., Ltd.*, Case No. 2:06-CV-167, 2006 U.S. Dist. LEXIS 75017, at *5 - *6 (E.D. Tex. Oct. 16, 2007); *Advance Me, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669, 673 (E.D. Tex. 2006) (website may satisfy minimum contacts where it allows owners to "engage in repeated online contacts with forum residents through the site").

Residents of Texas cannot order Fuzeon via Trimeris' website, and Trimeris has not solicited orders from residents of Texas.  (Exhibit E, ¶¶ 11, 23, 25; Exhibit J, ¶ 3).  Trimeris has not and does not engage in business transactions or enter into contracts, relating to Fuzeon, over the Internet with Texas residents.  (Exhibit E, ¶¶ 10-11, 25, 27; Exhibit J, ¶ 3).  Novartis cannot demonstrate that Trimeris participates in a substantive manner, other than allowing its logo to be used, with the Fuzeon website.  (Exhibit E, ¶ 26; Exhibit J, ¶ 4).  Trimeris does not contribute any substance to the Fuzeon website and has not done so since at least December 2006.  (Exhibit E, ¶ 26; *see also* Exhibit J, ¶ 4).  Trimeris is not involved in generating or maintaining information contained on the Fuzeon website.  (Exhibit E, ¶ 26; Exhibit J, ¶ 4).  Because of the nature and quality of Trimeris' involvement with the website, combined with the inability of potential customers to purchase Fuzeon through the website, the exercise of jurisdiction over Trimeris is not proper.

Moreover, Trimeris does not market, manufacture, sell, offer to sell or distribute the Fuzeon product within the Eastern District of Texas.  (Exhibit F, ¶ 6; *see also* Exhibit E, ¶ 10).  The limited involvement that Trimeris had with the clinical testing of Fuzeon ceased as of November 2007.  (Exhibit G, ¶ 3).  Moreover, none of that testing was conducted in the Eastern District of Texas.  (*Id.,* ¶ 4).  Trimeris did not direct or participate in the execution of the protocol for the clinical trial that took place in Texas, and Trimeris was identified as a collaborator on this clinical trial because half of the costs of the clinical trial were deducted as costs from its account.  (Exhibit E, ¶ 31).  Further, while Trimeris receives revenue based on the costs and profits related to Fuzeon, Trimeris does not have control of the manufacturing process or schedule and does not currently provide substantial input regarding the marketing of Fuzeon

(Exhibit E, ¶ 29; Exhibit F, ¶ 4; Exhibit J, ¶ 6). Accordingly, Trimeris lacks minimum contacts and cannot be subject to specific jurisdiction in the Eastern District of Texas.

Trimeris has not established any distribution network to purposefully direct any products at Texas. Thus, there is no basis for Novartis to contend that Trimeris placed the accused product into the stream of commerce in order for an infringing use to take place in Texas. Accordingly, Trimeris does not have sufficient minimum contacts with this forum to subject it to the personal jurisdiction of this Court under the stream-of-commerce theory.

2. *Trimeris Lacks The Continuous And Systematic Contacts With Texas That Are Required For General Personal Jurisdiction*

As described above, Trimeris has no continuous and systematic contacts with the State of Texas. It follows that Trimeris cannot be subject to general jurisdiction in this state. "[G]eneral jurisdiction is much more difficult to establish than is specific jurisdiction." *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 452 (E.D. Pa. 1999); *see also ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) ("To establish general jurisdiction over the defendant, the defendant's activities in the State must have been 'continuous and systematic,' a more demanding standard than is necessary for establishing specific jurisdiction."). Thus, general jurisdiction does not exist over Trimeris within Texas, and it would offend traditional notions of fair play and substantial justice for this Court to exercise personal jurisdiction over Trimeris.

**C.    Venue Over Trimeris Is Not Proper In The Eastern District Of Texas**

28 U.S.C. § 1406 requires this Court transfer the claims against Trimeris, as venue is improper in the Eastern District of Texas. Section 1406 provides, in relevant part:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the

interest of justice, transfer such case to any district or division in
which it could have been brought.

28 U.S.C. § 1406(a).  In *Goldlawr,* 369 U.S. at 466, the Supreme Court held that where a forum
court does not have jurisdiction over defendant, but the proposed transferee court would have
been an appropriate venue, the "language of Section 1406(a) is amply broad enough to authorize
the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue,
whether the court in which it was filed had personal jurisdiction over the defendants or not."

28 U.S.C. § 1400(b) is the exclusive venue statute for patent infringement claims against
United States residents.  *See VE Holding*, 917 F.2d at 1579-80.  To establish venue under 28
U.S.C. § 1400(b), a plaintiff must satisfy one of its two independent prongs.  The first prong
provides that venue is proper in a patent infringement action "where the defendant resides."  *Id.*
For corporate defendants, such as Trimeris, the "residency" element of the first clause of 28
U.S.C. § 1400(b) is defined by the corporate defendant venue provision of 28 U.S.C. § 1391(c).
*See id.* at 1580 (noting that "§ 1391(c) only operates to define a term in § 1400(b) – it neither
alone governs patent venue nor establishes a patent venue rule separate and apart from that
provided under § 1400(b)").  Accordingly, under Section 1400(b), "a defendant that is a
corporation shall be deemed to reside in any judicial district in which it is subject to personal
jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  A corporation is
deemed to reside within a judicial district located in a multi-district state like Texas if "its
contacts would be sufficient to subject it to personal jurisdiction if that district were a separate
State."  *Id.*  As shown above, there are no contacts between Trimeris and Texas as a whole that
would suffice to establish specific personal jurisdiction.  Moreover, the limited and isolated
contacts that have existed between Trimeris and Texas did not involve the Eastern District.

Accordingly, Trimeris would not be subject to personal jurisdiction in the Eastern District of Texas if it were a separate State, and thus the first prong of Section 1400(b) has not been met.

The second prong of 1400(b) requires Novartis to demonstrate that Trimeris has a "regular and established place of business" within the Eastern District of Texas *and* that Trimeris has committed infringing act with the District.  These requirements also cannot be met.  "[I]n determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there."  *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).  This standard may be satisfied by showing that "the defendant maintains, controls, and pays for a permanent physical location from which sales are made within the district."  *Johnston v. IVAC Corp.*, 681 F. Supp. 959, 962 (D. Mass. 1987).  Novartis cannot make such a showing with respect to Trimeris, because Trimeris has its offices solely in North Carolina and has not owned or rented any facilities in Texas, let alone in the Eastern District of Texas.  (Exhibit E, ¶¶ 3, 14, 17, 21).  Thus, Trimeris has no presence, much less the required "permanent and continuous presence" in the Eastern District of Texas.  Therefore, this prong of Section 1400(b) cannot be satisfied.

Because Novartis cannot satisfy the "regular and established place of business" requirement as to Trimeris, it cannot establish venue under the second prong of 1400(b) as a matter of law, and thus it is not even necessary for the Court to consider the further requirement that Trimeris must have committed infringing acts within the Eastern District of Texas.  In any event, Novartis cannot satisfy that further requirement.

## IV.    CONCLUSION

This Court correctly held on September 3, 2008 that *In re Volkswagen* would be "controlling" and *In re Volkswagen* clearly calls for the transfer of this action to the EDNC.  The

EDNC is clearly most the convenient forum given where the most significant events occurred, where the most important documents reside and where key non-party witnesses are subject to compulsory process.  For these reasons, Trimeris and the Roche Defendants request that the Court order a change of venue to the Eastern District of North Carolina.

Respectfully submitted this 27th day of October, 2008,

*/s/ Robert M. Chiaviello, Jr.*
Robert M. Chiaviello, Jr.
Texas Bar No. 04190720
**Lead Attorney**
Kirby B. Drake
Texas Bar No. 24036502
**FULBRIGHT & JAWORSKI L.L.P.**
2200 Ross Avenue, Suite 2800
Dallas, Texas  75201-2784
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
Email: bobc@fulbright.com

**COUNSEL FOR DEFENDANTS HOFFMANN-LA ROCHE INC., ROCHE LABORATORIES INC. AND TRIMERIS, INC.**

Of Counsel:

Stephen S. Rabinowitz
Mitchell Epner
**FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP**
1 New York Plaza
New York, New York 10004
Telephone: (212) 859-8000
Fax: (212) 859-4000
Email: stephen.rabinowitz@friedfrank.com
          mitchell.epner@friedfrank.com

7124511

## <u>CERTIFICATE OF CONFERENCE</u>

I, Robert M. Chiaviello, Jr., hereby certify that the parties have met and conferred in compliance with Local Rule CV-7(h).  Specifically, telephonic conferences were held on October 26, 2008 between counsel for the movants and non-movant.  Participants in the conference included Bob Chiaviello and David Carter and Sam Baxter (counsel for non-movant). The parties' discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.  The motion is therefore opposed.

Respectfully submitted this 27th day of October, 2008,

/s/ *Robert M. Chiaviello, Jr.*
        Robert M. Chiaviello, Jr.

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Robert M. Chiaviello, Jr.

Robert M. Chiaviello, Jr.