UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NOVARTIS VACCINES AND DIAGNOSTICS, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:07-CV-507 |
| | § | |
| HOFFMANN-LA ROCHE INC., | § | |
| ROCHE LABORATORIES INC., | § | |
| ROCHE COLORADO CORP., | § | |
| TRIMERIS, INC., and | § | |
| F. HOFFMANN-LA ROCHE LTD. | § | |
| | § | |
| Defendants. | § | |

## NOVARTIS' OPPOSITION TO DEFENDANTS' RENEWED MOTION TO TRANSFER, OR TO DISMISS TRIMERIS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND...................................................................................2

    A.  Fuzeon is Sold Nationwide, Including the Eastern District of Texas ......................2

    B.  Trimeris Derives Virtually all of its Income from Fuzeon and has a
        Significant Input into the Development and Marketing of Fuzeon .........................3

    C.  Trimeris Co-Developed and Jointly Operates the Fuzeon Website ........................5

    D.  The Trimeris Logo Is Prominently Displayed on the Product
        Packaging and Trimeris Touts Its Role with Respect to Fuzeon ............................6

III.  ARGUMENT..........................................................................................................7

    A.  The Motion to Transfer Should be Denied .............................................................7

        1.  Defendants Bear the Burden of Demonstrating "Good
            Cause" to Transfer .......................................................................................8

        2.  The Private Factors Demonstrate Transfer Would Shift the
            Burden from Defendant to Plaintiff and Would Be
            Improper.......................................................................................................9

            a.  The Sources of Proof Do Not Favor
                Transfer......................................................................................10

            b.  Availability of Compulsory Process .....................................................12

            c.  The Willing Witnesses' Cost of
                 Attendance .................................................................................13

        3.  The "Public Interest" Factors Favor Texas.................................................15

    B.  Trimeris Is Subject to Personal Jurisdiction in the Eastern District
        of Texas...................................................................................................................17

IV.  CONCLUSION.....................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Newell Rubber-Maid Inc.*,
  07-C-313-S, 2007 U.S. Dist. LEXIS 62512 (W.D. Wis. Aug. 21, 2007) .........................13, 16

*AdvanceMe, Inc. v. Rapidpay LLC*,
  450 F. Supp. 2d 669 (E.D. Tex. 2006) ..........................................................................7, 12, 19

*Aerielle, Inc. v. Monster Cable Prod., Inc.*,
  Civ. No. 2:06-CV-382, 2007 WL 951639 (E.D. Tex. Mar. 26, 2007) ..........................7, 15, 16

*Aloft Media, LLC v. Adobe Sys.*,
  Civ. No. 6:07-cv-355, 2008 U.S. Dist. LEXIS 23601 (E.D. Tex. Mar. 25, 2008) .................11

*Alpine View Co. Ltd. v. Atlas Copco AB*,
  205 F.3d 208 (5th Cir. 2000) ....................................................................................17, 18, 20

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
  21 F.3d 1558 (Fed. Cir. 1994)...................................................................................17, 18, 21

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006)..........................................................................................18, 19

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985).............................................................................................................17, 20

*Candela Corp. v. Palomar Med. Tech. Inc.*,
  No. 9:06-CV-277, 2007 WL 738615 (E.D. Tex. Feb. 22, 2007)............................................13

*Durel Corp. v. Oxram Sylvania Inc.*,
  256 F.3d 1298 (Fed. Cir. 2001)...............................................................................................13

*Elec. for Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003)...............................................................................................18

*Genetic Implant Sys., Inc. v. Core-Vent Corp*,
  123 F.3d 1455 (Fed. Cir. 1997)..........................................................................................20, 21

*In re Volkswagen of America ("Volkswagen")*.
  Civ. No. 07-40058, 2008 U.S. App. LEXIS 21377 (5th Cir. Oct. 10, 2008)................. passim

*International Shoe, Co. v. Washington*,
  326 U.S. 310 (1945)...........................................................................................................17, 21

ii

*Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*,
  Civ. No. 2:05-CV-185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005)..............................17, 20

*Kelly v. Syria Shell Petroleum Dev. B.V.*,
  213 F.3d 841 (5th Cir. 2000) ........................................................................................18, 20

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
  232 F.3d 1369 (Fed. Cir. 2000)..........................................................................................17

*Marshall Packaging Co., LLC v. Nestle Waters North America, Inc.*,
  No. 6:05-CV-295, 2006 WL 871015 (E.D. Tex. Mar. 24, 2005) ...........................................20

*MHL Tek, LLC v. Nissan Motor Co.*,
  Civ. No. 2:07-CV-289, 2008 WL 910012 (E.D. Tex. Apr. 2, 2008)......................................19

*Revell v. Lidov*,
  317 F.3d 467 (5th Cir. 2002) ..............................................................................................19

*Sybase, Inc. v. Vertica Sys., Inc.*,
  No. 608 CV 24, 2008 WL 2387430 (E.D. Tex. June 9, 2008) ......................................9, 12, 14

*Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*,
  395 F.3d 1275 (Fed. Cir. 2005)..........................................................................................19

*VCode Holdings, Inc. v. Cognex Corp.*,
  No. 2:07-CV-138, 2007 WL 2238054 (E.D. Tex. Aug. 3, 2007) ...........................................11

*Viam Corp. v. Iowa Export-Import Trading Co.*,
  84 F.3d 424 (Fed. Cir. 1996)........................................................................................19, 21

STATUTES

28 U.S.C.
  § 1404.......................................................................................................................7, 17
  § 1406(a) .......................................................................................................................7

iii

## I.      INTRODUCTION

The defendants' renewed motion to transfer fares no better after the Fifth Circuit's *en banc* opinion *In re Volkswagen of America ("Volkswagen")*.  Civ. No. 07-40058, 2008 U.S. App. LEXIS 21377 (5th Cir. Oct. 10, 2008).  The private and public factors still weigh heavily against transfer to North Carolina.  Unlike *Volkswagen*, where the Court found "nothing that ties" the case to the Eastern District of Texas, here the defendants have infringed the patent-in-suit in this district and evidence of a sale of the accused product within this district is before the Court.  Moreover, the private and public factors do not favor transfer.  Defendants have not shown, in accordance with *Volkswagen*, that the Eastern District of North Carolina is clearly more convenient than the Eastern District of Texas.  Unlike *Volkswagen*, a personal injury suit with a clear connection to another venue, there is no venue that is clearly better for all of the parties.

Trimeris's renewed motion to dismiss should also be denied.  Trimeris derives virtually all of its revenue from sales of the accused product in this case, Fuzeon, a fusion-inhibitor HIV drug.  Fuzeon was co-developed by Trimeris and Trimeris retains the intellectual property rights to Fuzeon that it has exclusively licensed to various Hoffman-La Roche entities.  It is undisputed that Fuzeon is sold nationwide, including in the Eastern District of Texas.  As sold, Fuzeon is branded with the Trimeris logo.  [Dkt. No. 37-9.][1]  Trimeris and Hoffman-La Roche Inc. ("Roche") have a complex "strategic alliance" whereby Roche manufacturers and sells Fuzeon and both parties share in the costs and the profits.  Trimeris is anything but a silent partner.  In fact, Trimeris states on its website that the "alliance structure allows Trimeris to retain a

---

[1] Novartis incorporates its prior response by reference and the exhibits submitted thereto, and cites to the documents using the format [Dkt. No. 37-1 through 37-12.]

1

*significant economic interest and a major strategic role* in the research, manufacturing, and commercialization of its fusion-inhibitor drugs."[2]

Trimeris glosses over these and other facts that demonstrate it would not be unfair for Trimeris to litigate a patent infringement case regarding Fuzeon in Texas.  Trimeris concedes it was involved with the clinical trials for Fuzeon in Texas and was involved in promotional activities for Fuzeon in Texas.  Trimeris co-developed and helps maintain the official Fuzeon website, which allows potential customers (including customers throughout Texas) to assess whether Fuzeon is appropriate for their individual medical conditions.  Despite Trimeris's unsupported assertions to the contrary, the Trimeris logo appears prominently on virtually everything relating to Fuzeon, including the packaging and patient information which is sold and distributed in the Eastern District of Texas.  [*See e.g.*, Dkt. No. 60 at ¶5 ("Trimeris has not contacts with the forum that would subject it to the Court's jurisdiction."); *but see* Dkt. No. 37-9 (Fuzeon packaging containing Trimeris logo).]  Under these circumstances, there are more than the needed minimum contacts to subject Trimeris to personal jurisdiction in this Court. Accordingly, the motion to dismiss should be denied.

## II.    FACTUAL BACKGROUND

### A.    Fuzeon is Sold Nationwide, Including the Eastern District of Texas

Fuzeon is sold throughout the United States:  "FUZEON is widely available through retail pharmacies and wholesalers across North America."  [Dkt. No. 37-1 at 6.]  Moreover, Fuzeon has been (and continues to be) sold and offered for sale in the Eastern District of Texas. A tax receipt demonstrating a sale of the accused product in Marshall, Texas, on November 13,

---

[2] *See* http://www.trimeris.com/150Alliances.aspx (emphasis added).  [*See also* Dkt. No. 37-12, ¶ 5; 37-1.]

2007, is before the Court.  [*See* Dkt. Nos. 37-12, ¶ 3; 37-2.]  Fuzeon was approved by the FDA

in 2003, and shipments began that same year.  [*See* Dkt. Nos. 37-3 to 37-5.]  Thus, Fuzeon has

been sold in the United States (and Texas) for approximately five years.

B.   **Trimeris Derives Virtually all of its Income from Fuzeon and has a Significant Input into the Development and Marketing of Fuzeon**

The business of Trimeris is Fuzeon.  The Trimeris 10-Q, dated May 12, 2008, states:

> Trimeris is a biopharmaceutical company primarily engaged in the commercialization of a new class of antiviral drug treatments called fusion inhibitors. . . .
>
> *Trimeris has a worldwide agreement (the "Development and License Agreement") with F. Hoffmann-La Roche Ltd., or "Roche," to develop and market T-20, marketed as FUZEON, whose generic name is enfuvirtide.*  FUZEON is manufactured and distributed by Roche through Roche's sales and distribution network throughout the world in countries where regulatory approval has been received.  *The Company shares gross profits equally from the sale of FUZEON in the United States and Canada with Roche. . .*
>
> *The Development and License Agreement with Roche accounted for 100% of the Company's royalty revenue for the three months ended March 31, 2008 and 2007.  The Development and License Agreement also provides the basis for substantially all of the Company's results from the collaboration and milestone revenue.  Substantially all of the accounts receivable at March 31, 2008 and December 31, 2007, are comprised of receivables from Roche owing under the Development and License Agreement.*

[*See* Dkt. No. 37-1 at 4.]  Thus, Trimeris would essentially have no revenue whatsoever without

sales of Fuzeon.[3]

The Development and License Agreement ("Agreement") with Roche is complex and

provides Trimeris with substantial input regarding the strategy and marketing of Fuzeon.  [*See*

---

[3] The Trimeris strategic plan for 2008 is specifically designed to maximize Fuzeon revenue.  [*See* Dkt. No. 37-1 at 10 ("The 2008 strategic plan is designed to maximize cash flows from FUZEON. . . ."); *see also id.* ("During November 2006, the Company announced a shift in strategic emphasis and reorganization to focus on FUZEON profitability and research and early stage development.").]

3

*generally* Dkt. No. 37-6.]  The Agreement grants Roche an exclusive worldwide license to Fuzeon, the rights to which are owned by Trimeris.  [*See* Dkt. No. 37-1 at 5 ("The Development and License Agreement, as amended, grants Roche an exclusive, worldwide license for FUZEON"); *see also* Dkt. No. 37-6 at § 2 ("License Grant").]  Under the Agreement, Trimeris has influence over the marketing budget:  "Roche cannot adopt a budget for the marketing of FUZEON above certain limits without the agreement of [Trimeris]."  [Dkt. No. 37-1 at 5.]  Additionally, Trimeris pays Roche for some of the manufacturing costs for the facility that produces Fuzeon:  "[Trimeris] will pay Roche for [Trimeris'] share of the capital invested in Roche's manufacturing facility over a seven-year period."  [*Id.* at 6.]

The Agreement has been amended several times and it provides for extensive involvement of Trimeris in virtually all aspects of Fuzeon.  [*See id.* at 5.]  For example, Trimeris is involved in strategy decisions regarding Fuzeon.  [*See id.* at 5 ("Under this agreement, a joint management committee consisting of members from Trimeris and Roche oversees the strategy for the collaboration.").]  The Joint Steering Committee ("JSC") is responsible for approving annual development plans and budgets, monitoring the development program, and establishing subcommittees and project committees.  [*See* Dkt. No. 37-6 at § 3.2.]  The JSC establishes a "Development Project Team," also consisting of representatives from both Trimeris and Roche, to implement the "Development Program" established by the JSC.  [*Id.*]  There are elaborate procedures regarding decision-making in the JSC, including arbitration if Trimeris and Roche cannot agree on product development issues.  [*See id.* at § 3.3 ("JSC Decisions").]  Trimeris is involved in the development of Fuzeon.  [*See* Dkt. No. 37-1 at 7 ("Under the Development and License Agreement, development costs for FUZEON are shared equally. . . .  Both Roche and Trimeris incur development costs for FUZEON."); *see also* Dkt. No. 37-6 at § 3.]

4

Thus, the Agreement provides Trimeris with significant influence over virtually all aspects of Fuzeon, including strategic planning and marketing.  Trimeris receives payments based on sales of Fuzeon,[4] so Trimeris directly benefits from placing Fuzeon into the stream of commerce.  Trimeris also concedes that it was involved in clinical trials and marketing activities in Texas [Dkt. No. 60-5, ¶6 (Declaration of Andrew Graham),] but it erroneously asserts that activities that occur in the forum before the patent issued are irrelevant to jurisdiction.  It appears Trimeris sponsored at least eight clinical trials in locations throughout Texas (including Dallas, Houston, Fort Worth, Galveston, and Austin) regarding Fuzeon.  [*See* Dkt. No. 37-7 (Information from ClinicalTrials.gov, a website maintained by the U.S. National Institutes of Health).]  The studies began in 1999, and at least the AMICI trial appears to be active today. [*Id*.; Dkt. No. 60-7 (Declaration of Carol Jean Guittari).]

### C.    Trimeris Co-Developed and Jointly Operates the Fuzeon Website

Trimeris and Roche jointly operate a website devoted to Fuzeon (www.fuzeon.com). [*See* Dkt. No. 37-8.]  The website provides extensive information for patients and medical professionals.  [*Id*.]  The website has an interactive feature called "Is FUZEON Right For You?"

---

[4] According to the Trimeris 10-Q [Dkt. No. 37-1 at 6]:

> Product sales of FUZEON began in the United States in March 2003 and are recorded by Roche.  Under the Development and License Agreement with Roche, the Company shares gross profits equally from the sale of FUZEON in the United States and Canada with Roche.  Collaboration income is calculated as follows:  Total gross sales of FUZEON in the United States and Canada is reduced by any discounts, returns or rebates resulting in total net sales.  Net sales are reduced by costs of goods sold resulting in gross profit.  Gross profit is reduced by certain selling, marketing and other expenses related to the sale of FUZEON, resulting in operating income or loss. . . ."  Revenue is recognized when Roche ships drug and title and risk of loss passes to wholesalers.  FUZEON is widely available through retail pharmacies and wholesalers across North America.

sf-2599229

This feature allows users to enter personal health information to assess the appropriateness of

Fuzeon.  [*See* Dkt. No. 37-8 at 6-7.]  The website allows users to register for updates, allowing

Roche/Trimeris to direct marketing materials to those users.  [*See id.* at 9-10.]  Trimeris is

involved in maintaining the website:  "All information contained in this website is generated and

maintained by Roche Laboratories Inc., Nutley, New Jersey, and Trimeris, Inc., Morrisville,

North Carolina."  [*See id.* at 8.]  Trimeris also helped with development:  "This Web site was

developed as a service provided by Roche Laboratories Inc. ('Roche') and Trimeris, Inc.

('Trimeris')."[5]  The Trimeris logo is prominently displayed on virtually every page of the Fuzeon

website.  [*See, e.g.*, *id.*]  Of course, the website is accessible in this district.

> **D.    The Trimeris Logo Is Prominently Displayed on the Product Packaging and Trimeris Touts Its Role with Respect to Fuzeon**

Finally, the Fuzeon product itself is prominently stamped with the Trimeris logo, which

appears on the packaging [Dkt. No. 37-9,] the patient product information [Dkt. No. 37-10,] and

the prescribing information [Dkt. No. 37-11.]  In fact, the Trimeris-Roche agreement *requires*

that the Trimeris name be identified on "packaging and promotional materials."  [Dkt. No. 37-6

at § 5.4 ("Use of the Trimeris Name").]  Of course, Fuzeon is prominently featured on virtually

every page of the Trimeris corporate website [Dkt. No. 37-8,] in its press releases [Dkt. Nos. 37-

3 to 37-5,] and in its SEC filings [Dkt. No. 37-1.]  Thus, Trimeris and Fuzeon are held out to the

public as inexorably linked.

All of the facts set forth above directly relate to Fuzeon, the accused product in this case,

and are therefore highly relevant to the jurisdictional issue.  The relevant facts pertaining to the

---

[5] The website displays the following copyright information:  "©2003-2007 Roche Laboratories Inc. and Trimeris, Inc."  [*See* Dkt. No. 37-9 at 7; *see also* Dkt. No. 37-8.]  The Trimeris telephone number is provided on the "Contact Us" page.  [*See* Dkt. No. 37-8 at 9.]

sf-2599229

Court's consideration of the Defendants' motion to transfer are cited and discussed below in reference to each private and public interest factor addressed by defendants.

## III.   ARGUMENT

### A.   The Motion to Transfer Should be Denied

Trimeris and the Roche defendants have renewed their request that this action be transferred to the Eastern District of North Carolina under 28 U.S.C. § 1404, relying heavily on the Fifth Circuit's *en banc* decision, *Volkswagen*, which clarified the standards and factors to be analyzed when deciding such a motion to transfer venue.  2008 U.S. App. LEXIS 21377 at *26. Applying those standards, the motion to transfer should be denied.  Indeed, *Volkswagen* has limited relevance to this case.

The factors for a motion to transfer venue are analyzed on a case-by-case basis.  *See Aerielle, Inc. v. Monster Cable Prod., Inc.*, Civ. No. 2:06-CV-382, 2007 WL 951639 at *3 (E.D. Tex. Mar. 26, 2007) ("When considering whether to transfer venue, the district court "must exercise its discretion *in light of the particular circumstances of the case*.")(citation omitted)(emphasis added).  Defendants cannot meet their burden to show it is clearly more convenient to try this case in North Carolina.  None of the relevant factors favor transfer, and a transfer would simply shift inconvenience to other parties including the defendants who do not reside in or near North Carolina.  The renewed motion to transfer should be denied.[6]

Initially, the relevant facts here are starkly different from those at issue in *Volkswagen*. *Volkswagen* was a product liability case involving a single event, a car accident, which occurred

---

[6] Trimeris also requests transfer pursuant to 28 U.S.C. § 1406(a).  [*See* Dkt. No. 60 at 21-22.]  As demonstrated below, this Court has personal jurisdiction over Trimeris, and, therefore, venue is proper.  As a result, transfer under section 1406(a) would be inappropriate.  *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669 (E.D. Tex. 2006).

7

in Dallas.  2008 U.S. App. LEXIS 21377 at *29.  The car involved in the accident was purchased in Dallas County.  *Id.*  The witnesses to the accident and its aftermath resided in Dallas.  *Id.*  The third-party defendant and two of the three plaintiffs lived in the greater Dallas area.  *Id.* at *29, *35.  Important physical evidence from the accident, and the collision site, were located in Dallas.  *Id.* at *30-31.  An accident report was created by police officers in Dallas.  *Id.*  The medical examiner performed the autopsy in Dallas.  *Id.*  Plaintiffs even "conceded that the Dallas Division would be a convenient venue."  *Id.* at *34.  In *Volkswagen*, there were *no* evidentiary ties or grounds for liability located in the Eastern District of Texas.  *Id.* at *35.

In contrast, this case is a patent infringement case, where alleged infringement has been shown to occur in the Eastern District of Texas by the sale of the accused product within the district.  [*See* Dkt. No. 37-2.]  Unlike *Volkswagen*, where the Court found "nothing that ties this case to the [Eastern District of Texas] except plaintiffs' choice of venue," *id.* at *10, here the defendants have infringed the patent-in-suit in the Eastern District of Texas and branded the accused products with their logos.  [Dkt. No. 37-9.]  Thus, operative facts giving rise to this lawsuit have occurred and are occurring in the Eastern District of Texas on a daily basis because the defendants offer for sale and sell their accused product here.

### 1. Defendants Bear the Burden of Demonstrating "Good Cause" to Transfer

The party who seeks the transfer of venue must show good cause for transfer.  *Volkswagen*, 2008 U.S. App. LEXIS 21377 at *26.  The Fifth Circuit has defined good cause to mean that the movant, in order to prevail on a motion to transfer venue, "must satisfy the statutory requirements and *clearly* demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"  *Id.* (emphasis added).  "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice

8

should be respected." *Id.* Defendants have not demonstrated such good cause. Therefore, Novartis' choice to file suit in the Eastern District of Texas should be respected and Defendants' motion to transfer be denied.

> **2.** **The Private Factors Demonstrate Transfer Would Shift the Burden from Defendant to Plaintiff and Would Be Improper**

The Court must analyze both private and public factors when considering a motion to transfer. *See Volkswagen,* 2008 U.S. App. LEXIS 21377 at *27; *see also Sybase, Inc. v. Vertica Sys., Inc.*, No. 608 CV 24, 2008 WL 2387430 (E.D. Tex. June 9, 2008). "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of the compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make the trial of a case easy, expeditious, and inexpensive." *Volkswagen*, 2008 U.S. App. LEXIS 21377 at *27 (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)) (further citations omitted).

Defendants make five main arguments in favor of transfer: (1) that some of the relevant documents are in North Carolina, (2) that North Carolina courts can exercise compulsory process over some potential witnesses, (3) that North Carolina is more convenient for some Trimeris witnesses, (4) that the citizens of the Eastern District of Texas do not have a localized interest in this patent infringement case, and (5) that the supposed "center of gravity" is in North Carolina. As set forth below, none of these arguments is persuasive. Moreover, defendants fail to address the fact that transfer would cause inconvenience for witnesses of other parties in the lawsuit. At best, transfer would merely reallocate inconvenience. That is plainly insufficient to show "good cause" for a transfer.

9

### a.    The Sources of Proof Do Not Favor Transfer

This is a patent case involving Fuzeon, a pharmaceutical that is manufactured in

Colorado and Michigan (or Switzerland) and sold throughout the United States.  Fuzeon was

developed in part in North Carolina and the FDA approval process was conducted in the

Washington D.C. area.

The listed inventors on the Novartis patent conducted their pioneering work in California

and still reside in the state.  [*See* Ex. 2, Declaration of Dr. Luciw as attached to this opposition.]

Like most patent cases, there will be significant expert testimony from both sides and those

experts will inevitably be drawn from across the United States (and the world).  Based on

experience in related litigations, it is anticipated at least eight fact witnesses in addition to the

inventors have relevant testimony for this litigation (not inclusive of the former Trimeris

employees noted in Defendants' renewed motion).  [*See* Ex. 3, Declaration of Matthew I.

Kreeger as attached to this opposition.]  None of these eight witnesses resides in North Carolina.

[*See id.*]  Plaintiff Novartis is located in California, defendant Roche Colorado is located in

Colorado, defendant Trimeris is located in North Carolina, and the defendant Roche entities are

located in New Jersey.  Novartis has gathered approximately 75,000 pages of documents to

demonstrate conception and reduction to practice of the invention claimed in the '271 patent;

these documents were converted to electronic form and delivered to Marshall, Texas where they

are currently available.  [*See* Ex. 4, Declaration of John Garvish as attached to this opposition.]

The relevant sources of proof are therefore spread across the country, including the Eastern

District of Texas.

In its renewed motion, however, defendants merely list a few categories of documents

maintained in North Carolina that defendants argue may be relevant to their defenses.

Defendants ignore the obvious fact that the locations of the bulk of the documents and evidence

10

needed to litigate this case are *not* in North Carolina.  Documents related to each defendant's

liability for infringement and damages will be found at their corporate residences.  More

importantly, defendants do not indicate how transfer would make producing documents to the

parties located outside of North Carolina any more convenient for themselves or Novartis.  And

defendants must make that showing in order to meet their burden of showing clear convenience.

*See Volkswagen,* 2008 U.S. App. LEXIS 21377 at *26.

In this case, the parties have already agreed, in discussions which took place in

preparation for the case management conference, to produce documents in electronic form

whenever possible, using an agreed-upon format.  Documents are readily converted into

electronic form that can easily be produced in this case.  Indeed, production in electronic form

will likely be more efficient and cheaper than production on paper and such production is

commonplace in patent cases.  *See*, *e.g.*, *Aloft Media*, *LLC v. Adobe Sys.*, Civ. No. 6:07-cv-355,

2008 U.S. Dist. LEXIS 23601 at *12 (E.D. Tex. Mar. 25, 2008) ("[P]atent litigation usually

involves sources of proof that are readily convertible to an electronic medium."); *VCode*

*Holdings, Inc. v. Cognex Corp.*, No. 2:07-CV-138, 2007 WL 2238054 at *3 (E.D. Tex. Aug. 3,

2007) ("the location of *documents* is of little consequence since they will almost certainly be

produced electronically.") (emphasis added).  Because no other party is located in North

Carolina, Trimeris will need to undergo the same burden of production for the documents it lists

in its motion whether the case is tried in North Carolina or the Eastern District of Texas.

Therefore, defendants have not shown they will benefit from a transfer of this case with regard to

increased convenience when producing their relevant documents.

Nothing in *Volkswagen* is to the contrary.  *Volkswagen* addressed the location of *physical*

*evidence* located in the Dallas Division, including the accident site and the physical car involved

11

in the accident at the center of the case.  2008 U.S. App. LEXIS 21377 at *30-31.  Defendants

have pointed to no comparable physical evidence that is relevant here, nor could they.  Unlike

the traffic accident in *Volkswagen*, this patent infringement action involves companies from

different states, witnesses from across the country, and a product sold nationwide.  Unlike

*Volkswagen*, in this case there is no single venue that contains all of the relevant parties,

witnesses, sources of proof, or immovable sources of physical evidence.  *Volkswagen* has

virtually no relevance to this case.

Nor have defendants demonstrated how transfer to North Carolina would make the

document collection and production any less burdensome for *all* of the parties.  *See Sybase*, 2008

WL 2387430 at *2 (finding, in a case where the parties were located in different states, that this

factor did not support transfer where defendant did not explain how transfer would make

document production less burdensome - "irregardless of forums, the parties would necessarily

engage in transcontinental document exchanges").  In fact, Novartis is located in California,

Roche is located in New Jersey, and Roche Colorado is located (and Fuzeon is manufactured) in

Colorado.  If anything, Texas appears to be more centrally located for all of the parties than

North Carolina.  Shifting burdens from one party to another is not grounds for transfer.  *See*, *e.g.*,

*AdvanceMe*, 450 F. Supp. 2d at 675.  Thus, this factor weighs against transfer.

### b.       Availability of Compulsory Process

Defendants claim that there are witnesses with supposedly "key" information in North

Carolina that are not subject to this Court's compulsory process.  Initially, it is not clear that any

of these witnesses have meaningful testimony and, if so, what it might be and why it could not be

obtained for trial in Texas.  Defendants hint that the witnesses may provide information relating

to an enablement defense, but it is not clear from defendants' vague description of the anticipated

testimony how work done years after the effective filing date of the Novartis patent would be

12

relevant to enablement.  It appears that defendants suggest that the Novartis patent must enable Fuzeon, rather than the claims of the patent.  That is not the law and testimony directed to whether the '271 patent enables Fuzeon is irrelevant.  *See, e.g.*, *Durel Corp. v. Oxram Sylvania Inc.*, 256 F.3d 1298, 1306 (Fed. Cir. 2001) ("The dispositive question of enablement does not turn on whether the accused product is enabled.").  Moreover, all of the defendants' declarations were submitted by former Trimeris employees.  [Dkt. Nos. 29-1 to 29-4.]  Trimeris was able to obtain the declarations for its motion and the declarants do not state that they refuse to attend trial in Texas.  Thus, the issue of compulsory process does not appear to be significant.

Moreover, testimony as to enablement is generally the province of experts who can appear to testify in Texas.  And with widespread use of videotaped depositions, this factor becomes less meaningful:  "With modern video deposition technology, the need for many witnesses to travel at all is reduced or eliminated."  *Candela Corp. v. Palomar Med. Tech. Inc.*, No. 9:06-CV-277, 2007 WL 738615 at *5 (E.D. Tex. Feb. 22, 2007); *see also Adams v. Newell Rubber-Maid Inc.*, 07-C-313-S, 2007 U.S. Dist. LEXIS 62512 at *7 (W.D. Wis. Aug. 21, 2007) ("in patent actions, depositions are customary and are satisfactory as a substitute for technical issues") (citation omitted).  Given the fact that defendants reside in three states and Novartis resides in a fourth state, there is surely no district that will have compulsory process available for every potential witness.  Unlike *Volkswagen,* where a transfer of venue brought *all* witnesses within the subpoena power of the court, a transfer here would simply mean that *different* potential witnesses would not be subject to the subpoena power of the court.  2008 U.S. App. LEXIS 21377 at *31.  This factor does not favor transfer.

### c.      The Willing Witnesses' Cost of Attendance

Defendants argue that several of the developers of Fuzeon are in North Carolina. Trimeris submitted virtually identical declarations from these individuals (all former Trimeris

13

employees) stating that they would be inconvenienced if required to travel to Texas for trial due to "prolonged absence" from work.  These declarations are not persuasive.  Witnesses can be deposed where they reside and trial time is not significant, particularly given the efficient trials in this Court and the fact that witnesses can be prepared where they reside.  Moreover, as set forth above, Fuzeon is the sole source of income for Trimeris and the developers of Fuzeon will have incentives to appear for trial, regardless of where it is held.  Trimeris can surely obtain the attendance of its own employees and can presumably do the same for its former employees.

Defendants have also failed to demonstrate how the testimony of the developers of Fuzeon will be critical in this action.  In this patent infringement case, the question whether Fuzeon infringes the patent will be determined by comparing its current composition to the patent claims.  In fact, precisely how Fuzeon was developed will be largely irrelevant.

Inventor testimony, on the other hand, is important and highly relevant evidence to a patent litigation trial.  Dr. Paul Luciw, a third-party and a named inventor on the '271 patent-at-issue, has stated he would be willing to attend trial in Marshall, Texas.  [Ex. 2, ¶¶ 1 and 6.]  Thus, the facts here are in sharp contrast to those in *Volkswagen*, where virtually all of the witnesses with relevant information lived closer to (or in) the Northern District of Texas than they did to the Eastern District of Texas.  *Id.*  Indeed, in *Volkswagen*, the list of potential witnesses submitted by the defendant included a third party defendant, accident witnesses, accident investigators, treating medical personnel, and the medical examiner.  *Id.*  In this case, by contrast, defendants do not even address the convenience of other parties to this case, or the fact that no other witnesses appear to reside in North Carolina.  *See Sybase*, 2008 WL 2387430 at *3 ("[T]ransferring this case to Massachusetts would simply shift the cost and inconvenience to

14

[Plaintiff], who is located in California."). Transfer would merely reallocate inconvenience to other parties (and third party witnesses yet to be determined). Therefore, this factor is neutral.[7]

### 3.    The "Public Interest" Factors Favor Texas

The "public factors" also favor Texas. These factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Volkswagen*, 2008 U.S. App. LEXIS 21377 at *27-28. None of these factors weighs in favor of transfer.

The time from filing to trial for both jurisdictions is comparable, even according to the statistics cited by defendants, which are not specific to patent infringement cases. Also, defendants' statistics do not account for the fact that this case already has a scheduled case management conference for December 9, 2008, in the Eastern District of Texas. A transfer to the Eastern District of North Carolina would place this case at the end of the case line and likely result in an increase in time to trial. This Court also has Local Patent Rules and considerable experience with patent cases. Therefore, this first public factor, administrative difficulties flowing from court congestion, is at most neutral for transfer.

Contrary to defendants' assertions, the Eastern District of Texas has a considerable localized interest in patent infringement occurring within its district. *See Aerielle,* 2007 WL 951639 at *3 ("The admitted sale of allegedly infringing products in the Eastern District of

---

[7] With regard to the final private factor (*i.e.*, all practical problems that make trial of a case easy, expeditious and inexpensive), defendants do not specify any particular practical problem. Therefore, this factor would be neutral.

sf-2599229

Texas is an event that is significant and relevant to the citizens of this district.").[8]  This Court is

also well-versed in the applicable law and there are no issues with conflict of laws, as this is a

patent case governed by a uniform federal law.  *Id*.  Thus, none of these factors favors transfer.

Defendants' "center of gravity" argument is similarly unpersuasive in this case where

there is no center of gravity.  While the development of Fuzeon appears to have been in North

Carolina, manufacturing occurs in Colorado (and Michigan or Switzerland), and, significantly,

the inventions described and claimed in the asserted Novartis patent were made in California.

The FDA approval process for Fuzeon was evidently managed by Roche in New Jersey.  Clinical

trials occurred in many states, including several in Texas.  And, of course, Fuzeon is sold (and

infringes) throughout the United States, including Texas, the second most populous state in the

nation.  Thus, as in most patent cases, there is no single, identifiable "center of gravity."  *See

Adams*, 2007 U.S. Dist. LEXIS 62512 at *5, *10 (finding Western District of North Carolina not

to be a clearly more convenient forum even though research, development, design and marketing

of accused infringing product happened there because "patent infringement cases involve a

comparison of the alleged infringing device with the language of the claims, and therefore 'the

material events of a patent infringement case do not revolve around any particular situs'")

(citation omitted).  Moreover, it is not clear that either the Fifth Circuit or a judge in this court

---

[8] Defendants misconstrue a statement made by the Fifth Circuit in *Volkswagen* and assert
that the sale of an infringing item in a jurisdiction does not create a local interest.  *See
Volkswagen*, 2008 U.S. App. LEXIS 21377, at *34-35.  However, *Volkswagen* was decided in a
context where one venue had a direct and clear interest (the accident and witnesses were in
Dallas) and another had, at best, only an indirect interest.  Because infringing sales of the
accused product in this case occur nationwide, there is no venue with a clear and direct interest in
this lawsuit.  That one of the defendants is located in North Carolina does not mean that that state
has a meaningfully more significant interest in the outcome of this case than any other state.  As
indicated above, infringing sales have occurred in Marshall, Texas.  And Texas has the same
interest in the vindication of Novartis' patent rights as North Carolina.

16

has ever adopted the "center of gravity" test proposed by Trimeris in the patent infringement context. A "center of gravity" test was not mentioned in *Volkswagen* as being a factor to consider in a §1404 analysis.

Trimeris has not identified a single factor that weighs in favor of transfer, let alone a factor that would clearly outweigh increased burdens on other parties and the fact that Novartis filed this case in the Eastern District of Texas.

### B.     Trimeris Is Subject to Personal Jurisdiction in the Eastern District of Texas

Personal jurisdiction in patent cases is governed by Federal Circuit law. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564 (Fed. Cir. 1994). "[D]ue process requires . . . that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe, Co. v. Washington*, 326 U.S. 310, 316 (1945).[9] Minimum contacts are established by "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). In short, the Due Process Clause requires a court to determine whether a defendant "should reasonably anticipate being haled into court" in the forum. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

---

[9] The Texas long-arm statute extends the reach of personal jurisdiction to the limits of the United States Constitution. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000). Thus, the Court need only consider whether sufficient contacts exist between Trimeris and the State of Texas to satisfy the "minimum contacts" requirements. *See Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd.*, Civ. No. 2:05-CV-185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2005).

Where the Court decides a motion to dismiss without holding an evidentiary hearing, the plaintiff must make only a *prima facie* showing of the facts on which jurisdiction is predicated. *Elec. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003); *Alpine View*, 205 F.3d at 215.  To determine whether a *prima facie* case exists, the Court must accept as true Novartis' "uncontroverted allegations, and resolve in [its] favor, all conflicts between the facts contained in the parties' affidavits and other documentation."  *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213  F.3d 841, 854 (5th Cir. 2000) (quoting *Alpine View*, 205 F.3d at 215).  Once the plaintiff has satisfied its initial burden, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006).

The Federal Circuit set forth the requirements for the exercise of jurisdiction "consonant with due process" in *Beverly Hills Fan*.  In *Beverly Hills Fan*, the Court found that the plaintiffs stated:

> all of the necessary ingredients for an exercise of jurisdiction
> consonant with due process: defendants, acting in consort, placed
> the accused fan in the stream of commerce, they knew the likely
> destination of the products, and their conduct and connections with
> the forum state were such that they should reasonably have
> anticipated being brought into court there.

*Beverly Hills Fan*, 21 F.3d at 1566.  Although Trimeris asserts that it does not currently conduct business in Texas, it is undisputed that the Roche entities conduct business in Texas and are subject to jurisdiction in the Court.  [*See* Dkt. No. 28 at 7.][10]  Despite the close and complex

---

[10] *See id*. ("Hoffman-La Roche and Roche Laboratories have marketed and distributed the accused product, Fuzeon, throughout the United States, including in Texas.  Under *Beverly Hills Fan*, that suffices to establish personal jurisdiction over those two corporations.").

18

"strategic alliance" regarding Fuzeon, Trimeris virtually ignores the Trimeris-Roche agreement

and the crucial role Trimeris plays in placing Fuzeon into the stream of commerce.[11]

Specifically, as set forth above:

- The entire Fuzeon enterprise could not exist without Trimeris' grant of the exclusive license to its Fuzeon patents to Roche;

- The Trimeris-Roche agreement provides for a joint steering committee to decide strategy matters, procedures for sharing development expenses, a process for determining marketing budgets, and the sharing of manufacturing expenses;

- Trimeris receives one-half of the profits from the sale of Fuzeon, which constitutes virtually all of its income;

- The Trimeris name and logo are stamped on the Fuzeon product itself, as well as the Fuzeon patient and prescribing information;

- Trimeris sponsored several clinical trials for Fuzeon in Texas and was involved in marketing activities in Texas; and

- Trimeris developed and jointly maintains the Fuzeon website.[12]

The Trimeris argument that its contacts with Texas are somehow too attenuated to

support personal jurisdiction in this court cannot be maintained.  *See*, *e.g.*, *MHL Tek, LLC v.*

*Nissan Motor Co*., Civ. No. 2:07-CV-289, 2008 WL 910012 (E.D. Tex. Apr. 2, 2008) (finding

---

[11] The Federal Circuit has held that licenses such as the Trimeris-Roche agreement are relevant to personal jurisdiction.  *See*, *e.g.*, *Breckenridge Pharm.*, 444 F.3d at 1365-66.  Although *Breckenridge* is a declaratory judgment case, the Federal Circuit has held that the test for personal jurisdiction is the same for a patentee and an accused infringer.  *See Viam Corp. v. Iowa Export-Import Trading Co*., 84 F.3d 424, 427 (Fed. Cir. 1996).  Under *Breckenridge* (and other cases summarized in *Breckenridge*), a defendant-licensor will be subject to personal jurisdiction in a venue in which its licensee does business if the license agreement contemplates a relationship beyond royalty or cross-licensing payments.  444 F.3d at 1366.  The Trimeris-Roche agreement is plainly far beyond a mere royalty or cross-licensing relationship.

[12] Although maintenance of a website is generally insufficient to establish personal jurisdictional standing alone, it is a factor to be considered.  *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc*., 395 F.3d 1275 (Fed. Cir. 2005); *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *AdvanceMe, Inc. v. Rapidpay LLC*, 450 F. Supp. 2d 669 (E.D. Tex. 2006).  In this case, the interactive Fuzeon website is just one of a number of facts demonstrating that Trimeris is subject to personal jurisdiction in this district.

19

personal jurisdiction over non-resident defendant); *Jacobs Chuck Mfg. Co. v. Shandong Weida Mach. Co., Ltd*., No. Civ. 2:05-CV-185, 2005 WL 3299718 (E.D. Tex. Dec. 5, 2008) (same).

Under these circumstances, a reasonable commercial entity such as Trimeris should anticipate being haled into the courts of a state (including Texas) in which Fuzeon is sold.  It is clear that Fuzeon-related actions by Roche are not "the unilateral activity of another party or third person" that cannot be attributed to Trimeris.  *See Burger King*, 471 U.S. at 475 & n.17. Indeed, the opposite is true:  the facts clearly demonstrate that Trimeris is deeply (and financially) involved in the entire enterprise that culminates with Fuzeon being sold in the Eastern District of Texas.

To the extent the Klein or Graham declarations —which vaguely state that Trimeris does not presently manufacture or market Fuzeon, relying instead on Roche to perform those functions — are inconsistent with the Roche-Trimeris agreement, statements on the Trimeris website, and Trimeris's 10-Q filed with the SEC, the facts are disputed and must be resolved in favor of Novartis.  *See Kelly*, 213 F.3d at 854; *Alpine View*, 205 F.3d at 215; *see also Marshall Packaging Co., LLC v. Nestle Waters North America, Inc*., 6:05-CV-295, 2006 WL 871015 at *3-4 (E.D. Tex. Mar. 24, 2005) ("The Court will accept as true the party seeking jurisdiction's uncontroverted allegations, 'and resolve in its favor, all conflicts between the facts contained in the parties' affidavits and other documentation.'").

Trimeris erroneously asserts that activities before the issuance of the patent (*i.e*., the clinical trials in Texas and its marketing activities) are irrelevant to personal jurisdiction.  *See* Motion at 10.  The Federal Circuit has made it clear that jurisdiction is a different inquiry than liability and that it is irrelevant whether activities in the forum occur before or after the issuance of the patent.  *See Genetic Implant Sys., Inc. v. Core-Vent Corp*, 123 F.3d 1455 (Fed. Cir. 1997).

In *Genetic Implant*, the court found that activities in the forum, including deriving revenue from the forum and developing a customer base in the forum, which occurred *before the patent was granted*, were sufficient to establish personal jurisdiction. The court stated that the fact that the activities "may have occurred before the grant of the patent is irrelevant" since they showed that the party "engaged in substantial activities in the state." *Id*. at 1458. The court noted: "It is jurisdiction that is at issue, not liability for patent infringement." *Id*. Under *Genetic Implant*, Trimeris' promotional activities and clinical testing of Fuzeon in Texas are highly relevant to personal jurisdiction.

Even if a defendant has minimum contacts with the forum, personal jurisdiction over the defendant must not offend traditional notions of fair play and substantial justice. *International Shoe*, 326 U.S. at 316. Determining whether personal jurisdiction offends traditional notions of fair play and substantial justice involves balancing: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversies; and (5) the interest of the states in furthering their social policies. *Viam*, 84 F.3d at 429. Cases where personal jurisdiction offends traditional notions of fair play and substantial justice "are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Beverly Hills Fan*, 21 F.3d at 1568 (citing *Burger King*, 471 U.S. at 477).

This is not such a case. Trimeris derives virtually all of its revenue from Fuzeon and is significantly involved in the strategic decisions regarding Fuzeon. The relationship of Fuzeon to this district is not attenuated at all, let alone so attenuated that this is one of the rare situations

21

where exercising jurisdiction would offend traditional notions of fair play and substantial justice. The notion that Trimeris can be actively and significantly involved in directing the strategic alliance that places Fuzeon into a nationwide stream of commerce, including Texas, but only be subject to personal jurisdiction in North Carolina, cannot be maintained.

## IV.     CONCLUSION

Because it is actively involved in placing Fuzeon into the stream of commerce, Trimeris is subject to personal jurisdiction in this Court.  And because North Carolina is no more convenient for all of the parties than Texas, the motion to transfer should be denied.  Thus, the renewed motion [Dkt. Nos. 60-61] should be denied in its entirety.

Respectfully Submitted,

___/s/ Sam Baxter_____
Samuel F. Baxter
Texas Bar No. 01938000
Lead Attorney
MCKOOL SMITH, P.C.
104 East Houston, Suite 300
Marshall, Texas 75670
(902) 923-9000
(903) 923-9099 (fax)
sbaxter@mckoolsmith.com

**COUNSEL FOR PLAINTIFF NOVARTIS**
**VACCINES AND DIAGNOSTICS, INC.**

OF COUNSEL:

Rachel Krevans
Matthew I. Kreeger
Jason A. Crotty
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
(415) 268-7522

22

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in

compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have

consented to electronic service on November 17, 2008.  *See* Local Rule CV-5(a)(3)(A).


By: _____/s/ John Garvish_____
John F. Garvish, II

sf-2599229