**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **NOVARTIS VACCINES AND** | § | |
| **DIAGNOSTICS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO. 2:07-CV-507 (DF)** |
| **vs.** | § | |
| | § | |
| **HOFFMAN-LA ROCHE INC., et al.,** | § | |
| | § | |
| **Defendants.** | § | |

**O R D E R**

Before the Court is Defendants' Renewed Motion to Transfer Pursuant to 28 U.S.C §§ 1404 & 1406, or, in the alternative, to Dismiss Defendant Trimeris.  Dkt. Nos. 60 & 61.  Also before the Court are Plaintiff's response, Defendants' reply, Plaintiff's sur-reply, Plaintiff's Supplemental Brief, and Defendants' Supplemental Brief.  Dkt. Nos. 66, 70, 71, 86, and 87.  The Court held a hearing on this and other matters on December 9, 2008.  Dkt. No. 76 (hearing transcript).  Having considered all relevant papers and pleadings, the Court finds that Defendants' motions should be **DENIED**.

**I.  BACKGROUND**

Plaintiff Novartis Vaccines and Diagnostics, Inc. ("Novartis") filed this patent infringement action on November 19, 2007.  Dkt. No. 1.  Novartis alleges that Defendants  infringe U.S. Patent No. 7,285,271 ("the '271 Patent") entitled "Antigenic composition comprising an HIV gag or env polypeptide," by making and commercializing a drug known as Fuzeon.  Fuzeon is a HIV inhibitor that was developed in North Carolina by scientists at Defendant Trimeris, Inc. ("Trimeris").  The active pharmaceutical ingredient for Fuzeon is manufactured by Defendant Roche Colorado at its

Colorado facilities.  This active ingredient must be processed further by Hoffman-La Roche Inc. ("Hoffman La-Roche") in Michigan or by F. Hoffman-La Roche Ltd. ("Roche Ltd.") in Switzerland. The drug is then packaged by Hoffman La-Roche in New Jersey before it is marketed nationwide through Hoffman La-Roche's wholly-owned subsidary, Roche Laboratories, Inc. ("Roche Labs").

Defendants Hoffman-La Roche, Roche Labs, and Trimeris previously requested that this case be transferred from the Eastern District of Texas to the Eastern District of North Carolina.  Dkt. No. 29.  Because the Fifth Circuit's *en banc* opinion in *In re Volkswagen of America, Inc.*, 545 F.3d 304 (5th Cir. 2008), was still pending, this Court dismissed Defendants' motion to transfer without prejudice to refiling.  Dkt. No. 51.  Since that time, the Fifth Circuit has released its *Volkswagen* decision and the Federal Circuit has applied the regional circuit's  precedent to patent law in *In re TS Tech USA Corp.*, No. 09-M888, 2008 WL 5397522 (Fed. Cir. 2008).  Defendants now renew their motion to transfer in light of these recent decisions.   Dkt. No. 60.  If transfer is denied, Trimeris moves, in the alternative, for dismissal under Rules 12(b)(2) and (3).  Dkt. No. 61.

## II.  MOTION TO TRANSFER

### A.  Legal Principles

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1404(a) presupposes that the action has been brought in a proper venue but authorizes its transfer to another proper district that is more suited to the convenience of witnesses and the needs of justice.  The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions to transfer according to an "individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v.*

*Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

This Court generally recognizes a plaintiff's right to choose a venue and will not disturb that choice absent a showing that convenience and fairness necessitate transfer under the facts of that particularized case.   *In re Triton*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).   Accordingly, the defendant has the burden to show "good cause" that transfer is appropriate. *In re Volkswagen*, 545 F.3d at 314 ("[I]n order to support its claim for a transfer, [defendant] must satisfy the statutory requirement and *clearly demonstrate* that a transfer is for the convenience of parties and witnesses, in the interest of justice." (emphasis added)).

The Fifth Circuit has made clear that the first determination a district court must make is whether the claims might have been brought in the suggested transferee district. *Id.* at 312-13.   After such a determination, the district court must then consider the convenience of the parties in both venues. *Id.* at 314-16; *see also J2 Global Commc'ns Inc. v. Protus IP Solutions, Inc.*, Civil Action No. 6:08-CV-275, 2008 WL 5378010, at *3-6 (E.D. Tex. Dec. 23, 2008) (J. Love).   A convenience determination is essentially a balancing of the inconveniences that will transpire as a result of the plaintiff's choice of venue.

This balancing of conveniences involves the examination of several private and public interest factors, none of which has dispositive weight.   *In re Volkswagen*, 545 F.3d at 315.   The private factors address (1) the availability of sources of proof, (2) the court's ability to secure witnesses' attendance, (3) the expense associated with witnesses' attendance, and (4) all other factors relevant in conducting an expeditious and inexpensive trial. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501(1947)).   The public convenience factors address (1) administrative issues and the congestion of the courts' dockets, (2) the local interest in having the dispute decided locally, (3) the

courts' familiarity with the controlling law, and (4) the potential conflicts of law issues that may arise. *Id.*

## B. Parties' Positions and Discussion

The initial inquiry in resolving a motion to transfer venue under § 1404(a) is whether the district court to which the movant requests transfer is a district in which the case could have been initially filed. *In re Volkswagen*, 545 F.3d at 312-13. The parties do not contest that venue would have been proper had this case been brought in the Eastern District of North Carolina because all Defendants are subject to personal jurisdiction therein. *See* Dkt. No. 60 at 11. The Court now moves to the second stage of the analysis, which considers the private and public interest factors restated in *In re Volkswagen*.

### 1. Private Convenience Factors

#### a. Availability of Sources of Proof

Defendants argue that the "key sources of proof with regard to defendants' lack of enablement defenses reside in North Carolina, where the invention and pre-clinical development of Fuzeon occurred." Dkt. No. 60 at 13. In addition, Defendants contend certain documents in North Carolina will demonstrate the health benefits and side effects of the drug, which are relevant to any injunction that may be issued. *Id.* at 14. Finally, Defendants contend that virtually no proof exists in the Eastern District of Texas. *Id.*

In contrast, Plaintiff points out that the relevant proof in this case is spread throughout the nation—as Fuzoen was developed in North Carolina, was approved by the FDA in Washington D.C., is presently manufactured in Colorado and Michigan (and Switzerland), and is sold throughout the United States. Dkt. No. 66 at 14. Likewise, the home offices of the parties are spread throughout

the nation—Plaintiff in California, Roche Colorado in Colorado, Trimeris in North Carolina, and the other Roche defendants in New Jersey.  *Id.*  Plaintiff also contends that the listed inventors on its patent conducted their work in California.  *Id.*

Because these parties are in such divergent locations, Plaintiff argues that Defendants have ignored the fact that the bulk of the documents needed to litigate this case are not located in North Carolina, but are instead spread throughout the nation.  *Id.*  Moreover, Plaintiff contends that the Eastern District of Texas is more centrally located than the Eastern District North Carolina, making Texas a more convenient location to litigate this case.  Dkt. No. 86 at 6.  In fact, Plaintiff contends that all evidence would have to travel an additional eight hundred miles to reach North Carolina.  *Id.* at Table 2.  As a result, ease of access to proof is arguably not increased by transfer.

Finally, Plaintiff claims that approximately 75,000 pages of documents, which demonstrate conception and reduction to practice of the claimed invention, are currently available in Marshall.  Dkt. No. 66 at 14.  In response, Defendants argue that the these documents were shipped to Marshall in anticipation of litigation and should be discounted.  Dkt. No. 70 at 3.

This Court finds that the Eastern District of Texas is a centrally located venue for this litigation.  The sources of proof in this case are many and are spread across the nation.  While transfer to North Carolina would make access to *some* proof easier, this Court is not convinced that access to all evidence would be so.  In fact, important evidence on the West Coast relating to the development of the patented invention would be far more difficult to reach if this case were transferred to the East Coast.

As such, this case is distinguishable from both *In re Volkswagen* and *In re TS Tech*.  In both of those cases, the physical evidence was confined to a limited region.  In *Volkswagen*, all of the

physical evidence considered by the Circuit, including the car and the accident site, was located in a single venue.  *In re Volkswagen*, 545 F.3d at 316 ("*All* of the documents and physical evidence relating to the accident are located in the Dallas Division, as is the collision site." (emphasis added)). In *TS Tech*, the all of the evidence considered by the Circuit was centered in the Midwest, particularly in Ohio, Michigan, and Ontario.  *In re TS Tech*, 2008 WL 5397522, at *4 ("*all* of the physical evidence, including the headrests and the documentary evidence, are *far more conveniently* located near the Ohio venue" (emphasis added)).  The added of convenience of litigating *TS Tech* in Ohio stemmed from the fact that all of the parties, and thus all of the evidence, were located within roughly 300 miles of the Southern District of Ohio.[1]

Such is not the case here.  If this case was transferred to the Eastern District of North Carolina, some evidence would be located nearly 2,400 miles away.  At present, the farthest that any piece of evidence has to travel to reach the Eastern District of Texas is roughly 1,600 miles.  Even if this Court ignores the fact that some evidence is currently located on servers in Texas, the Eastern District of North Carolina is still not a venue in which evidence is more easily accessible overall.

Accordingly, this Court finds that this factor does not weigh in favor of transfer.

### b. The Court's Ability to Secure Witnesses' Attendance

Federal Rule of Civil Procedure 45(b)(2) governs the places where a subpoena issued by a court of the United States may be served.  A court's subpoena power, however, is subject to Rule 45(c)(3)(A)(ii), which protects non-party witnesses who work or reside more than 100 miles from

---

[1] The Federal Circuit's opinion in *TS Tech* did not provide the specific locations for the parties' home offices and the vast majority of the physical evidence.  The plaintiff, Lear Corp., was located in Southfield, Michigan, which is just outside of Detroit.  The American defendants were located in Reynoldsburg, Ohio, which is just outside of Columbus.  Finally, the Canadian defendant was located in Newmarket, Ontario, which is just outside of Toronto.  Since the distance between Toronto and Columbus, where the Southern District of Ohio is also located, is a little over 300 miles, all of the evidence was within roughly 300 miles of the transferee district.

the courthouse.  *See In re Volkswagen*, 545 F.3d at 316.

Defendants argue that certain third-party "key witnesses" reside and are subject to process in North Carolina but are unlikely to be able to attend trial in this district, which could not compel them to do so.  Dkt. No. 60 at 14.  In response, Plaintiff first disputes whether these identified witnesses possess such "key" information. Dkt. No. 66 at 16.  In fact, Plaintiff disputes whether such witnesses could provide any meaningful testimony.  *Id.*  In addition, Plaintiff points out that these witnesses have not stated that they would refuse to attend trial in Texas; instead, they have only stated that they are "unlikely to be able to attend a trial . . . in Texas."  *Id.*  Finally, since the parties reside in four separate states, Plaintiff submits that there is no single venue that could secure compulsory process over every potential witness.  *Id.*  To that end, Plaintiff identifies fact witnesses in Alabama, Maryland, Missouri, and California that would be outside the subpoena power of the transferee court.  *See* Dkt. No. 70 at 4.

At the present time, this Court does not find it necessary to evaluate the materiality of the testimony that may be provided by identified witnesses.  Although this factor was certainly not designed to allow the identification of needless witnesses in an attempt to gain a transfer of venue, this factor may be resolved without such an inquiry given the facts of this case.  Given the national character of this lawsuit, neither venue will enjoy absolute subpoena power over all potential non-party witnesses.

As a result, the Court finds that this case is distinguishable from both *In re Volkswagen* and *In re TS Tech*.  In *Volkswagen,* the Fifth Circuit faced a fact scenario in which the transferee venue enjoyed absolute subpoena power over all possible witnesses.  *In re Volkswagen*, 545 F.3d at 317 ("Moreover, a proper venue that does enjoy *absolute* subpoena power for both depositions and

trial—the Dallas Division—is available." (emphasis in original)).  In *TS Tech*, the Federal Circuit did not address this factor because the parties had not identified a single non-party witness that would be outside the subpoena power of either the transferor or transferee court. *See Lear Corp. v. TS Tech USA Corp.*, Civil Action No. 2:07-CV-406, Dkt. No. 43 at 5 (E.D. Tex. Sept. 10, 2008) (parties' agreed this fact was neutral because neither identified witnesses not amenable to process in Texas).  Thus, both possible venues in *TS Tech* enjoyed absolute subpoena power over all supposed witnesses.

This case is different.  Neither this Court or the transferee court would enjoy absolute subpoena power in this case.  North Carolina will admittedly have subpoena power over a handful of potential witnesses.  Nonetheless, a North Carolina court will not enjoy such power over other important witnesses.  This Court finds that a transfer from one district without absolute subpoena power to another without absolute subpoena power is not clearly more convenient—such a transfer will merely reallocate inconvenience to the transferee district.  In such a situation, this factor is does not weigh in favor of transfer.

### c. The Cost of Obtaining Attendance of Witnesses and Other Trial Expenses

The parties submit similar arguments in connection with this factor as they do those above. Defendants identify certain witnesses in North Carolina who would have an easier time attending trial there.  Dkt. No. 60 at 15.  Defendants argue that  the Eastern District of Texas is clearly outside the 100-mile threshold established by *Volkswagen.  Id.*  Plaintiff responds by questioning the materiality of the North Carolina witnesses.  Dkt. No. 66 at 17-18.  Defendants respond to this allegation by questioning the relevancy of the "irrelevant individuals" identified by Plaintiff.  Dkt. No. 87 at 4-5.  In any case, Plaintiff argues that witnesses outside of North Carolina would generally

suffer a greater inconvenience if the case were transferred; in other words, transfer would merely reallocate inconvenience rather than lessen it.  *Id.* at 18-19; Dkt. No. 86 at 3-5.

At this time, this Court finds it unnecessary to consider the materiality of the testimony that each identified witness would offer.  As with the availability of evidence, the central location of the Eastern District of Texas in relation to this nationwide suit makes it, at the very least, as convenient a location as North Carolina.  The parties have identified fourteen  witnesses that may be called at trial.  *See* Dkt. No. 86 at Table 1.  The four who reside in North Carolina would clearly find it more convenient to litigate in their own backyard.  Conversely, the five witnesses  who reside in California would be forced to travel roughly 800 additional miles if the case were transferred.  All told, of the fourteen identified witnesses, seven would travel less if the case were transferred while the other seven would be forced to travel more.

As a result, the Court once again finds that this case is distinguishable from both *In re Volkswagen* and *In re TS Tech*.  In *Volkswagen*, each identified witness resided in Dallas, the transferee venue.  *In re Volkswagen*, 545 F.3d at 317.  Thus, every witness would have been forced to travel outside the Fifth Circuit's 100-mile threshold to reach Marshall, Texas.  *Id.*  In *TS Tech*, each identified witness resided within roughly 300 miles of the transferee court while the transferor court was an additional 900 miles away.  *In re TS Tech*, 2008 WL 5397522, at *4.  Thus in both cases, all identified witnesses were focused within the same geographical region.

In this case, however, the witnesses are decentralized.  As such, the convenience of all witnesses involved would not be served by transferring the case to the East Coast.  Such a transfer would instead increase the distance that numerous witnesses would be forced to travel.  While this Court is not prepared to find that nationwide suits—such as this one—must be litigated in a

centralized venue,  the facts of this case do suggest that the transferee venue is not more convenient for many involved.  Therefore, this factor does not weigh in favor of transfer.

### d.   Other Factors Relevant in Conducting an Expeditious and Inexpensive Trial

This case, filed November 19, 2007, is still in its earliest stages.  In addition, any delay and prejudice associated with transfer is only relevant "in rare and special circumstances" and only if "such circumstances are established by clear and convincing evidence."  *In re Horseshoe*, 337 F.3d at 434.  Finding no such circumstances, and given the fact the that the parties submit no other relevant factors for consideration, the Court finds this factor neutral.

### 2.  Public Interest Factors

### a.  Administrative Issues and the Congestion of the Courts' Dockets

The parties agree that the Eastern District of North Carolina is the 10th fastest civil docket with an average time to trial of 16.5 months, while the Eastern District of Texas is the 14th fastest docket with an average time to trial of 18 months.  *See* Dkt. No. 60 at 16.  This Court finds any such difference to be negligible.  Therefore, the Court finds this factor neutral.

### b.  Burdens of Jury Duty and the Local Interest in Adjudicating Local Disputes

In a suit where an allegedly infringing product is sold nationwide, the Federal Circuit has stated that no one venue has "more or less of a meaningful connection to [the] case than any other venue."  *In re TS Tech*, 2008 WL 5397522, at 4 ("Here, the vehicles containing TS Tech's allegedly infringing headrest assemblies were sold throughout the United States, and thus the citizens of the [transferor court] have no more or less a meaningful connection to this case than any other venue.").  This factor is therefore neutral.

### c. The Courts' Familiarity with the Controlling Law

The parties submit no reason why one district would have more familiarity with the controlling law in this case.  Therefore, this factor is neutral.

> d.  *Conflicts of Law*

The parties submit no conflict of law issues and the Court finds none.  Therefore, this factor is neutral.

## C.  Conclusion

Under the Fifth Circuit's *In re Volkswagen* standard, the movant must "clearly demonstrate that a transfer is for the convenience of parties and witnesses, [and] in the interest of justice."  545 F.3d at 314 .  Because this case is nationwide in scope, each factor is either neutral or does not weigh in favor of transfer as demonstrated above.  As such, Defendants have not *clearly demonstrated* that transfer is appropriate.

## III.  MOTION TO DISMISS

Defendant Trimeris moves in the alternative for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3).  Dkt. No. 61.  Trimeris contends that it is not subject to personal jurisdiction in the Eastern District of Texas.  *Id.*

## A.  Legal Principles

District courts are bound by the law of the Court of Appeals for the Federal Circuit on matters of personal jurisdiction as to patent claims.  *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006); *Elecs. for Imaging, Inc. v. Coyle,* 340 F.3d 1344, 1348 (Fed. Cir. 2003); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564-65 (Fed. Cir. 1994); *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995).

A district court may exercise personal jurisdiction where (1) the state's long-arm statute

permits jurisdiction, and (2) the exercise of personal jurisdiction over the defendant does not violate federal due process. *Akro*, 45 F.3d at 1544-1545 (noting that personal jurisdiction in patent cases is governed by the due process clause of the Fifth Amendment, rather than the Fourteenth, but finding that the usual personal jurisdiction jurisprudence applies); *see also Elecs. for Imaging*, 340 F.3d at 1350 n.3. The Texas long-arm statute is coextensive with federal due process, thereby compressing the issue into a single due process inquiry. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

Personal jurisdiction may be either general or specific. General jurisdiction is proper where the defendant has "continuous and systematic" contacts with the forum state, even if those contacts are not related to the cause of action. *Elecs. for Imaging*, 340 F.3d at 1349 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)). Specific jurisdiction is proper where the defendant has "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Id.* at 1350 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The *Electronics for Imaging* court emphasized:

> The contacts made by defendants must therefore by their actions create a substantial connection to the forum state—where defendants have deliberately engaged in significant activities within a State or have created continuing obligations between themselves and residents of the forum—and proximately result from the actions by the defendants themselves, such that it is presumptively not unreasonable to require defendants to submit to the burdens of litigation in that forum as well.

*Id.* (internal citations omitted). The court summarized these requirements with the following factors: "whether (1) the defendant purposely directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities within the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Id.* (citations omitted).

Finally, where the district court's disposition as to the personal jurisdiction question is based "on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only . . . make a *prima facie* showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging*, 340 F.3d at 1349 (citations omitted).  In the procedural posture of a motion to dismiss, a district court "must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Id.* (citations omitted).

## B.  Parties' Positions and Discussion

Trimeris argues that it is not subject to personal jurisdiction in this district because it has no continuous and systemic contacts with Texas and because this cause of action does not arise out of any activities conducted by Trimeris in Texas.  Dkt. No. 61 at 22-26.  Trimeris contends that it does no business in Texas—none of its offices or officers are in Texas, none of its facilities or goods are maintained in Texas, and its has not availed itself of the court system in Texas.  *Id.* at 22.  Although Fuzeon is sold in Texas, Trimeris contends that it has not itself made any such sales or shipments. *Id.*  Moreover, Trimeris' website does not allow Fuzeon to be purchased at all, much less by Texas residents.  *Id.* at 22-23.  Finally, while Trimeris admits that some clinical testing for Fuzeon occurred in Texas, it contends that none of that testing occurred in this district, that any such testing ended prior to the patent's issuance, and that it did not participate directly in the execution of the Texas trials.  *Id.* at 23.

In response, Novartis relies on the "strategic alliance" between the Roche defendants and Trimeris.  Dkt. No. 66 at 22-24.  Because Trimeris, which owns the rights to Fuzeon, has granted Roche Ltd. an exclusive worldwide license and because Trimeris derives roughly one-half of its profits from Fuzeon, Novartis argues that Trimeris has played a crucial role in placing the drug into

the stream of commerce. *Id.* As such, Novartis argues that Trimeris should have anticipated being haled into any court of a state in which Fuzeon is sold. *Id.* Novartis also argues that Trimeris' pre-issuance activities within the State of Texas are relevant to a personal jurisdiction determination under Federal Circuit precedent. *Id.* at 24-25 (citing *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997)).

This Court finds that Trimeris has sufficient contacts with the State of Texas and the Eastern District of Texas to be subject to personal jurisdiction in this Court. Trimeris, in consort with the other defendants, has placed the allegedly infringing product into the stream of commerce and could have reasonably anticipated being brought into court in any state where that product is sold. *See Beverly Hills Fan Co.*, 21 F.3d at 1566; *Breckenridge Pharm., Inc.*, 444 F.3d at 1365 ("[A] defendant's obligations under an exclusive license agreement may subject it to personal jurisdiction in the forum state . . . so long as the exclusive licensee conducts business there."). Furthermore, Trimeris' pre-issuance activities within the State may very well be sufficient in their own right. The Federal Circuit has stated that activities that occur before the grant of a patent may be sufficient to show contacts with a forum. *Genetic Implant Sys., Inc.*, 123 F.3d at 1458 ("The fact that [certain activities] occurred before the grant of the patent is irrelevant since they do show that [the alleged infringer] engaged in substantial activities in the state."). Because Trimeris engaged in clinical testing in Texas, it has purposely directed its activities at the residents of this State. Therefore, the assertion of personal jurisdiction over Trimeris is both reasonable and fair.[2]

## C. Conclusion

---

[2] Because this Court finds that the exercise of personal jurisdiction over Trimeris is reasonable and fair, this Court also finds that the Eastern District of Texas is a proper venue for this suit. *See* 28 U.S.C. §§ 1400(b) & 1391. As such, Trimeris' motion under Federal Rule of Civil Procedure 12(b)(3) is likewise denied.

For the reasons stated above, Trimeris' Alternative Motion to Dismiss (Dkt. No. 61) is hereby denied.

## IV.  CONCLUSION

Defendant has not clearly demonstrated that the Eastern District of North Carolina is more convenient for this litigation.  Every private and public factor is either neutral or does not weigh in favor of the transfer.  None of the factors suggest that North Carolina is a more convenient venue for this litigation.  For all of the foregoing reasons, Defendant's Motion to Transfer Venue (Dkt. No. 60) is hereby **DENIED**.

In addition, Defendant Trimeris' alternative Motion to Dismiss (Dkt. No. 61) is likewise **DENIED**.

**SIGNED this 3rd day of February, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE